WOODS–TUCKER LEASING CORPORA-
TION OF GEORGIA, Appellant,
Cross-Appellee,

v.

HUTCHESON–INGRAM DEVELOP-
MENT COMPANY, A Partnership, and
Harry L. Crumpacker, III, Appellees,
Cross-Appellants.

No. 79–1651.

United States Court of Appeals,
Fifth Circuit.

April 3, 1981.

J. Albert Kroemer, Dallas, Tex., for appellant, cross-appellee.

David T. Harvin, Houston, Tex., for Vinson and Elkins, amicus curiae.

Leon Jaworski, Fulbright & Jaworski, Houston, Tex., Arthur Blanchard, Craig Murrin, DeHay & Blanchard, Dallas, Tex., for FNB Financial Co., amicus curiae.

John H. McElhaney, Dallas, Tex., for Aetna Life Ins. Co., etc.

George A. Crowley, Fort Worth, Tex., for Great American Management and Inv., Inc.

Steven A. Lande, Los Angeles, Cal., for Lipofsky, Lande & Leipziger.

Steve Brutsche, Gerald P. Urbach, Dallas, Tex., for appellees, cross-appellants.

On Petition For Rehearing

Before GOLDBERG, TATE, and SAM D. JOHNSON, Circuit Judges.

TATE, Circuit Judge:

The appellant's application for rehearing is granted. Our previous opinion, reported at 626 F.2d 401 (1980), is withdrawn and vacated and the following opinion is substituted in its place:

The central remaining issue of this appeal concerns whether a bankruptcy court sitting in Texas should honor a party contractual choice of Mississippi law in determining whether to apply the Texas or Mississippi usury statute to a transaction (involving Texas-located property) between a Texas partnership and a Mississippi-headquartered corporate subsidiary of a Georgia corpora-

tion. In our opinion on original hearing,[1] we held that Texas law applied to the transaction, despite the contractual choice of Mississippi law by the parties, essentially on the ground that, under Texas choice-of-law rules, the parties could not contrive to evade the usury laws of Texas in a loan transaction having its most significant contacts in Texas. The defendant-appellant restricts its application for rehearing so as to question only the panel's decision applying Texas law rather than the party-selected law of Mississippi[2]—a state with which the transaction bore a "reasonable relation," as solely required by Uniform Commercial Code § 1–105(1) (1972 version), adopted by the legislatures of both Texas and Mississippi.[3] Upon reconsideration, we find that, as contended, the party contractual choice of Mississippi law should be honored, and we affirm the district court's decision to that effect.

*Factual Context*

In the written instruments executed between the parties,[4] the Texas partnership (Hutcheson-Ingram) sold farm equipment to the Mississippi-based purchaser (Woods-Tucker) for $85,000 (although the evidence accepted by the trier of fact is that its value was some $197,000); Woods-Tucker simultaneously leased it back to Hutcheson-Ingram for three years at a rental of some $3,000 per month, for total (re)payments of $114,061. The lease, which expressly provided that it "shall be governed by the law of the state of Mississippi," was silent as to any right of Hutcheson-Ingram to repurchase the equipment. However, admitting extrinsic evidence,[5] the bankruptcy judge

---

1. The procedural posture of this case is fully set forth in our original opinion in 626 F.2d 401 (1980). It will not be reiterated here, since it is unnecessary to our decision.

2. See petition for rehearing by Woods-Tucker, the defendant appellant: "While Woods-Tucker continues to believe the ultimate issues were not determined correctly, the issue on which it now seeks rehearing is very limited." P. 4. Woods-Tucker's two principal substantive contentions were rejected both by the district court (applying Mississippi law) and by the bankruptcy court (applying Texas law, affirmed on our original panel hearing); they were (1) that parol evidence was inadmissible to prove a collateral oral agreement to repurchase the leased equipment (by virtue of which the sale-leaseback could be determined to be in reality a loan and secured transaction) and (2) that indeed the transaction was a sale-leaseback rather than a secured transaction. In view of the limited application for rehearing, we will not discuss these contentions in this opinion, although we will note briefly why we agree with the bankruptcy and district courts in rejecting them. See notes 5 (parol evidence) and 6 (real nature of the transaction), *infra*.

3. *See* Tex.Bus. & Com.Code Ann. tit. 1, § 1.105(a) (Vernon Supp.1979); Miss.Code Ann. § 75–1–105(1) (Supp.1980). (The state versions of the UCC shall be cited hereinafter as "Texas UCC," or "Mississippi UCC").

4. The facts are set out in greater detail in our original opinion at 626 F.2d 401 (1980) and are just summarized here.

5. Applying Mississippi law, the district court found that Mississippi's "usury exception" permits the reception of parol evidence to show that a document, regular on its face, was in fact a device to disguise usurious interest, and to establish the true facts with regard to the transaction. *Wilson Industries, Inc. v. Newton Bank*, 245 So.2d 27, 31 (Miss.1971); *Ready-Mix Concrete & Concrete Products Co. v. Perry*, 239 Miss. 329, 123 So.2d 241, 246 (1960); *Richardson v. Cortner*, 232 Miss. 885, 100 So.2d 854, 856 57 (1958); *Bell v. Tindall*, 215 Miss. 343, 60 So.2d 801, 803 (1952); *Alt v. Bailey*, 211 Miss. 547, 52 So.2d 283, 286 (Miss.1951). Woods-Tucker's effort to distinguish the application of these decisions is unconvincing.

In our original panel opinion we held, for reasons noted below, that parol evidence was not barred by the two provisions of the UCC relied upon by Woods-Tucker, identical in their Texas and Mississippi versions.

1. UCC § 2–202 (barring admission of parol evidence to contradict terms set forth in a writing intended by the parties as a final and complete expression of their agreement), Mississippi UCC § 75–2 202—we held that testimony concerning the oral option was admissible "because the oral option was collateral to, not inconsistent with, the lease obligation," 626 F.2d at 410.

2. UCC § 2–201(1) (providing that a contract for the sale of goods for a price of five hundred dollars or more "is not enforceable by way of action or defense" unless in writing), Mississippi UCC § 75 2–201(1)—we held that the parol evidence of the option was nevertheless available because "Hutcheson-Ingram is not seeking to enforce its oral purchase option. It seeks only to show that an option existed to shed light on the true nature of its [sale-leaseback] agreement with

found that the parties had entered into a collateral oral agreement that gave Hutcheson-Ingram the option to repurchase the equipment for $8,500 at the expiration of the three-year lease term, and that at that time the equipment would have a value in excess of the $40,000 for which it sold under distress conditions during the bankruptcy proceedings—findings that the district court affirmed (as do we) as not clearly erroneous (and as, in fact, supported by the great weight of the evidence, if the extrinsic evidence is admissible).

The bankruptcy court, considering these and other surrounding facts, determined that the transaction, although a sale-leaseback in form, was a transaction intended to create a security interest in the farm equipment to secure payment of the money advanced by the "purchaser" as the price, and that therefore it was a secured loan regulated by the UCC rather than a sale and leaseback intended to permanently divest Hutcheson-Ingram, the seller-borrower, of title.[6] *See* UCC §§ 1–201(37) and 9–102(1). This finding was affirmed by the district court and by us in our original hearing, as was the consequent determination of the

bankruptcy court that—treating the transaction as a secured loan—the amount exacted in repayment included interest in excess of 20% per annum.

We should here note that the transaction was therefore usurious under either Mississippi or Texas law, both of which then provided for a maximum interest rate of 10% per annum. The practical difference to the parties in the application of the respective laws is that Texas law provides more stringent penalties for usury violations, as well as clearly for the imposition of attorney's fees (as to which Mississippi law is less clear[7]).

## I. The Choice of Law Issue

 The choice of law issue arises in the context of a federal bankruptcy proceeding in Texas. It arises in connection with the enforcement by a Mississippi creditor of a security interest against a Texas debtor on an obligation finally executed in Mississippi, with regard to property located in Texas both at the time the transaction was entered into and at the time the security interest was sought to be enforced. Resolu-

---

Woods-Tucker." 626 F.2d at 411. Similarly to the district court, we did not find to be persuasive the contrary conclusion of *In Re Financial Computer Systems, Inc.,* 474 F.2d 1258 (9th Cir. 1973), a decision so far as can be determined that was never subsequently cited nor followed.

For similar reasons, we would affirm the holding that the parol evidence was admissible to prove the oral option agreement incident to the execution of the sale-leaseback documents and forming an integral part of the entire agreement between the parties.

6. The district court cited several factors as in aggregate supporting the conclusion that the transaction was a secured loan, including: 1) the fact that the property remained in the hands of the purported lessee; 2) the fact that the consideration for the property was considerably less than the property's value at the time of the sale and leaseback (here the sale price was $85,000 while the property was valued by Woods-Tucker at between $170,000 and $197,000); 3) the fact that Woods-Tucker required a guarantee from S. L. Hutcheson and William R. Ingram; 4) the fact that a substantial security deposit was required (here 10% of the sale price); 5) the fact that the three-year lease term was materially less than the useful life of the equipment, as evidenced by the fact that

the property liquidated for more than $40,000 near the end of the lease period; and, finally, 6) the fact that there was an option to repurchase.

Our original panel opinion cited these and other factors. 626 F.2d at 413.

For similar reasons, we would affirm the factual holding that the transaction represented a *secured loan rather than* (as Woods-Tucker contends) an intended sale and leaseback.

7. The bankruptcy court awarded attorney's fees, as expressly sanctioned by the Texas usury law, and considered the amount of the award as an element. On finding that, instead, Mississippi law applied, the district court noted that Mississippi law does not in terms provide for attorney's fees. Accordingly, the district court vacated that award and remanded the question to the bankruptcy court for reconsideration in light of Mississippi law. It instructed the bankruptcy court that, if the court determined on remand that attorney's fees are due under Mississippi law, a new hearing on that question would not be necessary—the bankruptcy court need only reconsider the amount awarded in light of the reduced benefit accruing to Hutcheson-Ingram under Mississippi law.

tion of the substantive issues does not implicate any federal rule or bankruptcy policy—but only whether, under applicable state law (either that of Texas or of Mississippi) the transaction is in fact a secured loan rather than a true sale-leaseback; and if a loan, whether it is usurious. Under these circumstances, whether the claim of the creditor is a "valid and subsisting" obligation "is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946) (holding, however, that under its circumstances the payment of interest on interest implicated federal bankruptcy policies and was determinable by federal, not state, law).

■ Where the transaction has multistate contacts (as here), *Vanston* continues, the determination of which particular state's law should apply "requires the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts in order best to accommodate the equities among the parties to the policies of those states." *Id.*, 329 U.S. at 162, 67 S.Ct. at 239. In the case before us, the transaction sought to be enforced in a Texas federal forum has significant contacts with both Texas and Mississippi. A threshold question here is whether in resolving issues of state law arising in the context of a bankruptcy proceeding, a federal court must apply the choice of law rules of the forum state in which it sits, *see Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), or may exercise its independent judgment and choose whatever state's substantive law it deems appropriate in the context of the case before it, *see* 1A Moore's Federal Practice ¶ 0.325, at 3406–13 (1980). Both the Supreme Court and this circuit have taken care to avoid resolving this question in the context of the Bankruptcy Act. *E. g., Vanston Bondholders Protective Committe v. Green, supra*, 329 U.S. at 161–62, 67 S.Ct. at 239; *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 371 n.2, 65 S.Ct. 405, 408 n.2, 89 L.Ed. 305 (1945); *Fahs v. Martin*, 224 F.2d 387, 396–97 (5th Cir. 1955); *but cf. In Re Wallace Lincoln-Mercury Co., Inc.*, 469 F.2d 396, 400 n.1 (5th Cir. 1972) ("In this federal bankruptcy case the District Court is not obliged to use the choice-of-law methodology of the forum state....") (*dicta*).[8]

To the extent we are faced with this threshold question of whether a federal or a forum (Texas) choice of law rule applies, we see no need to resolve it. For reasons to be elaborated, we find that Texas, by its adoption of the UCC, has provided a choice of law rule specifically directed to contrac-

---

**8.** Even if a federal bankruptcy court is not bound, as a general rule, to apply the forum state's choice of law rules in its resolution of issues of state law, there may nevertheless be issues which should be so resolved. *See generally* Note, *Applicability of State Conflicts Rules When Issues of State Law Arise in Federal Question Cases*, 68 Harv.L.Rev. 1212, 1218–22 (1955). The claim that the transaction is unenforceable as usurious under the law of the forum presented here would seem to be a case in point—the determination of whether usury prevents enforcement of the claim should not vary depending upon whether the defense is raised in a state or instead a federal court of the forum. At bottom, the issue presents a question that is "independent of bankruptcy and precedes it," *Vanston, supra*, 329 U.S. at 169, 67 S.Ct. at 243 (Frankfurter, J., concurring), and that should be resolved in a manner that is not inconsistent with the resolution that would have occurred had the bankruptcy proceeding not intervened. As Justice Frankfurter noted in his concurrence in *Vanston, supra*:

> To establish uniform laws of bankruptcy does not mean wiping out the differences among the forty-eight States in their laws governing commercial transactions. The Constitution did not intend that transactions that have different legal consequences because they took place in different states shall come out with the same result because they passed through a bankruptcy court. In the absence of bankruptcy such differences are the familiar results of a federal system having forty-eight diverse codes of local law. These differences inherent in our federal scheme the day before a bankruptcy are not wiped out or transmuted the day after.

*Vanston Bondholders Protective Committee v. Green*, 329 U.S. at 172 -73, 67 S.Ct. at 244–45 (Frankfurter, J., with Jackson and Burton, JJ., concurring).

tual choice of law provisions by parties to transactions regulated by the UCC. Texas UCC § 1.105(a). If we *were* required to exercise independent federal judgment in choosing whether to apply Texas or Mississippi law to this UCC-regulated transaction involving significant contacts with both Texas and Mississippi, we would likewise look to UCC § 1–105(1), adopted in identical versions in both Texas and Mississippi (see note 3 *supra*) as part of a national effort to establish a nationally uniform law to govern the validity and effect of commercial transactions. Texas UCC § 1.102(b)(3); Mississippi UCC § 75–1–102(2)(c). As stated in *In Re King-Porter Company*, 446 F.2d 722, 732 (5th Cir. 1971), although in the context of a different issue arising in a bankruptcy proceeding: "The Uniform Commercial Code has been adopted in all but one state. It should generally be considered as the federal law of commerce—including secured transactions."

■ We therefore conclude, as did the panel in *Fahs v. Martin, supra*, that the application of an independent federal choice of law rule and of the forum state's choice of law rule would lead to the same result, and thus "we do not determine which road the trial court should have travelled to arrive at the common destination." *Fahs v. Martin*, 224 F.2d at 399.

## II. *The Texas Choice of Law Rule*

Both parties contend that the Texas choice of law rule should determine whether the law of Texas or instead of Mississippi governs the validity and alleged usuriousness of this transaction with contacts with both states.[9] The debtor, Hutcheson-Ingram, contends that the law of Texas (pertinently, here, its usury law) applies, since Texas had the most significant contacts with the transaction and because the transaction can be regarded as a contrivance to evade the usury laws of Texas. The creditor, Woods-Tucker, contends that the law of Mississippi should apply because the parties contractually selected it—a party choice that must be honored under UCC § 1–

105(1), Texas UCC § 1.105(a), since the transaction bears a reasonable relation to Mississippi. For reasons to be stated, we agree with the creditor that Texas UCC § 1.105(a) requires that the Mississippi rather than the Texas usury law apply to this transaction.

With regard to the transaction, the borrower Hutcheson-Ingram points out that Texas has by far the most significant contacts. The lender, Woods-Tucker, a foreign corporation, was licensed to do business in Texas and had four offices there, in that it engaged in its multistate equipment lease-financing operations. Its Texas employees included a vice-president, a credit manager with the authority of a corporate treasurer, and some thirteen sales representatives. The present loan transaction was initiated in Texas by the borrower, Hutcheson-Ingram, a partnership engaged in citrus farming in Texas. The farm equipment accepted as security for the loan was at all times located in Texas.

The Mississippi contacts with the transaction are not as substantial. The home office and corporate headquarters of the lender, Woods-Tucker (a subsidiary of a Georgia corporation), are in Mississippi, from which it conducts its equipment-lease financing in states throughout the South and Southwest. After the present sale-leaseback financing agreement had been negotiated in Texas, the documents were sent to the Mississippi home office and there approved, following which Woods-Tucker's check for $85,000 was sent to Hutcheson-Ingram (although it is not clear from the record whether the check was mailed from the Mississippi office). The monthly payments by Hutcheson-Ingram were, at least initially, made to the Mississippi office of Woods-Tucker.

While the Texas contacts with the transaction are indeed the most significant, nevertheless the determinative issue is, for reasons to be stated, whether there is a reasonable relationship between Mississippi and the transaction so as to require the courts to honor the parties' express choice

---

**9.** Indeed, valid reasons support application of the Texas choice of law rule. *See* note 8 *supra*.

of Mississippi law to apply to their transaction.

UCC § 1–105(1) (1972 version), adopted by the legislatures of both Texas and Mississippi (see note 3 *supra*) provides with respect to transactions regulated by the UCC:

> Except as provided hereafter in this section, [no Code exceptions are applicable], when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.

Our examination of the Texas cases persuades us that the listed Mississippi contacts—unless they constitute a contrivance to evade the usury laws of Texas, see Part III *infra*—are sufficient to constitute a "reasonable relation" between the state of Mississippi and this transaction within the meaning of Section 1–105(1), so as to validate the parties' contractual choice of that state's law to apply to the transaction. *Walker v. Associated Financial Services Corp.*, 588 S.W.2d 416 (Tex.Civ.App.1979) (chosen law was that of Indiana, where the lender's home office was located and where the Texas borrower's mail application for a loan was accepted), *writ ref'd n. r. e. See also Dowling v. NADW Marketing, Inc.*, 578 S.W.2d 475, 476 (Tex.Civ.App.1979) (chosen law was that of domicile of one of the contracting parties), *writ ref'd n. r. e.*; Pedersen & Cox, *Choice of Law and Usury Limits Under Texas Law and the National Bank Act*, 34 Sw.L.J. 755, 767–70, esp. 767 & n.64, 770 & n.77 (1980).

UCC § 1–105, adopted by the Texas legislature as Texas UCC § 1.105, thus establishes the rule that parties to a multistate transaction are free to choose the law that will govern their rights and obligations so long as the jurisdiction whose law is chosen bears a "reasonable relation" to their transaction. Texas UCC § 1.105, Comment 1, UCC § 1–105, Comment 1 (1962 version). The substantive content of this "reasonable relation" test is illuminated by the case of *Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927), referred to in Texas UCC § 1.105, Comment 1, UCC § 1–105, Comment 1 (1962 version).

*Seeman* dealt with a loan from a Pennsylvania lender to a New York borrower under terms held to be usurious under New York law but nonusurious under Pennsylvania law. The contract did not contain a choice of law provision, but did provide for repayment of the loan in Pennsylvania. The United States Supreme Court stated the rule that, in order to further "a policy of upholding contractual obligations assumed in good faith," it would allow parties to contracts made in one state but to be performed in another to stipulate for the higher of the two applicable rates of interest. The Court went on to note:

> A qualification of [this rule], as sometimes stated, is that the parties must act in good faith, and that the form of the transaction must not "disguise its real character." As thus stated, the qualification, if taken too literally, would destroy the [rule itself] for [it] obviously [is] to be invoked only to save the contract from the operation of the usury laws of one jurisdiction or the other. The effect of the qualification is merely to prevent the evasion or avoidance at will of the usury law otherwise applicable, by the parties' entering into the contract or stipulating for its performance at a place which has no normal relation to the transaction and to whose law they otherwise would not be subject. Wharton, . . . in discussing this qualification, says: "Assuming that their real, *bona fide* intention was to fix the situs of the contract at a certain place which has a natural and vital connection with the transaction, the fact that they were actuated in so doing by an intention to obtain a higher rate of interest than is allowable by the situs of some other elements of the transaction does not prevent the application of the law allowing the higher rate."

*Seeman v. Philadelphia Warehouse Co.*, 274 U.S. at 408, 47 S.Ct. at 628.

■ Read in the light of *Seeman*, the "reasonable relation" test of UCC § 1–

105(1), limits party autonomy in the choice of law only to the extent that it forbids them to select the law of a jurisdiction that has "no normal relation to the transaction." That the intent of their choice of law provision was to avoid the usury laws of some interested jurisdiction is immaterial—they are perfectly free to do just that. What they are forbidden to do is to evade those laws *at will*, capriciously or fraudulently, by selecting the law of a jurisdiction without a normal relation to the transaction or by contriving contacts with an otherwise non-interested jurisdiction so as to validate their choice of law:

> When the Comment reference to *Seeman* is combined with the statutory policy favoring party autonomy, the result is that the parties' choice should be upheld unless the transaction lacks a *normal* connection with the state whose law was selected. Only when it is shown that the contact did not occur in the normal course of the transaction, but was contrived to validate the parties' choice of law, should the relationship be held unreasonable; in other cases the clause should be upheld. Courts should guard against combining notions of sovereignty in choice of law with the flexibility of the Code's "reasonable relation" test to strike down the selected law—leaving the parties with an uncertainty which the Code was designed to eliminate.

Nordstrom & Ramerman, *The Uniform Commercial Code and the Choice of Law*, 1969 Duke L.J. 623, 628 (1969).

This reading of Section 1–105(1) is in keeping with the UCC's underlying purpose of establishing a nationally uniform law to govern commercial transactions. Texas

UCC § 1.102(b)(3), UCC § 1–102(2)(c) (1962 version). The Code's devotion to the principle of party autonomy, particularly in the choice of law, is but a reflection of that policy. By calling upon state courts to yield to party choices of law in multistate transactions, except where it would be unreasonable to do so, the Code attempts to achieve uniformity—a uniformity arising from the ability of multistate contractants to select the law that will govern their transactions in the full expectation that their choice of law will be respected by whatever court might chance to hear their dispute.

The Texas cases—even those decided prior to that state's adoption of the UCC in 1967—do not run counter to this interpretation of the applicable choice of law rule:

> Under general Texas choice of law principles applicable in usury cases, contracting parties may specify that the validity and enforceability of an agreement and the rights and obligations of the parties thereunder, including the maximum interest rate, are to be governed by the law of a particular jurisdiction. In such a case, the substantive local law of the chosen jurisdiction will be applied by Texas courts if the contract and the transaction of which it is a part bear a reasonable relationship to that jurisdiction, provided: (i) neither such choice of law nor the reasonable relationship between the contract and the jurisdiction whose law is chosen constitutes a subterfuge or contrivance to evade application of Texas law, and (ii) neither the choice of another jurisdiction's law nor maintenance of an action based upon such law contravenes Texas public policy.[10]

---

10. With regard to the "public policy rule" set out in the quotation, the authors note:

 [N]o Texas cases involving an express choice of law appear to have considered the public policy issue, and no Texas decisions have held in a usury case that a choice of foreign law by a Texas resident was violative of a fundamental policy of the State of Texas. . . .

 In summary, Texas decisions do not indicate whether a Texas court would hold a choice of foreign law for usury purposes violative of Texas public policy. Numerous Texas decisions, however, have approved the ap-

plication of the usury laws of other states even when the borrower resides in Texas. Pedersen & Cox, *supra* in text, 34 Sw.L.J. at 778 79 (footnote omitted).

 We note that consideration of Texas public policy in this instance—where Texas is the forum state, the state with the most significant contacts with the transaction, and the state of the bankrupt borrower's domicile—would be particularly appropriate in the application of an independent federal choice of law rule by a federal bankruptcy court.

Pedersen & Cox, *Choice of Law and Usury Limits Under Texas Law and the National Bank Act*, 34 Sw.L.J. 755, 766 (1980) (authors' footnotes omitted).

### III. Contrivance to Evade Texas Usury Laws?

The bankruptcy judge, considering the circumstances outlined above, held that the contractual choice of law by the parties need not be honored since it was a contrivance to evade the usury laws of Texas. Hutcheson-Ingram argues that this factual finding by the bankruptcy judge should not have been disturbed by the district judge, since not clearly erroneous. In overturning that determination, the district court correctly noted that there was no evidence from which to infer that the transaction was a contrivance to evade Texas's usury law, there being a reasonable relation between the transaction and Mississippi. Succinctly, as we will elaborate more fully below, under UCC § 1–105 as a matter of law a party choice of law in a multistate UCC transaction cannot be regarded as a contrivance to evade the usury law of the borrower's state—even though the motivation may be to permit a higher rate of interest than allowable in the borrower's jurisdiction—when the transaction bears a reasonable relation to the state whose law is chosen to govern the transaction (as shown by the subsidiary facts found by the bankruptcy judge). See Part II *supra*. *Walker v. Associated Financial Services Corp.*, 588 S.W.2d 416 (Tex.Civ.App.1979), *writ ref'd n. r. e.; Securities Investment Company v. Finance Acceptance Corp.*, 474 S.W.2d 261 (Tex.Civ. App.1971), *writ ref'd n. r. e. See also Hi Fashion Wigs Profit Sharing v. Hamilton Investment Trust*, 579 S.W.2d 300 (Tex.Civ. App.1979), *no writ history*.

We have found no Texas case, and we are cited to none, that has refused to uphold an express party choice of law on the ground that the party choice constituted a contrivance to evade Texas law. *See* Pedersen & Cox, *supra*, 34 Sw.L.J. at 771 n.80.

Of the cases cited to us by the borrower Hutcheson-Ingram,[11] only one—*Building & Loan Ass'n of Dakota v. Griffin*, 90 Tex. 480, 39 S.W. 656 (1897)—found a contrivance to evade the usury laws of Texas. In that case, Texas residents borrowed money from a building and loan association whose corporate headquarters were in the territory of South Dakota. Although organized under the laws of South Dakota, the lender was licensed to do business in Texas and had in fact been conducting business in Texas for some ten years. The borrowers resided in Texas, all their property was situated in Texas, and the loan was secured by Texas property. The loan agreement contained no party choice of law provision, but provided that payments on the loan would be made at the lender's Dakota offices. On the basis of that provision, the lender argued that the (non)usury law of South Dakota, rather than the usury law of Texas, should control, since that territory was the place of performance for the loan. The Texas Supreme Court rejected the lender's argument, concluding that the stipulation for payment in Dakota was merely a contrivance to evade the laws of Texas. *Building & Loan Ass'n of Dakota v. Griffin*, 90 Tex. at 488, 39 S.W. at 659.

We do not find the *Griffin* case persuasive. *First*, we note that *Griffin* is a pre-UCC case, reached without consideration of the policies underlying the UCC as adopted by the legislature of Texas in 1967. To whatever extent its result would differ from that to be reached under Section 1–

---

**11.** Hutcheson-Ingram cites us to four cases that address the Texas choice of law rule here at issue: *Building & Loan Ass'n of Dakota v. Griffin*, 90 Tex. 480, 39 S.W. 656 (1897); *Dugan v. Lewis*, 79 Tex. 246, 14 S.W. 1024 (1891); *Hi Fashion Wigs Profit Sharing Trust v. Hamilton Investment Trust*, 579 S.W.2d 300 (Tex.Civ. App.1979), *no writ hist.; Securities Investment Co. v. Finance Acceptance Corp.*, 474 S.W.2d 261 (Tex.Civ.App.1971), *writ ref'd, n. r. e.*

Only three of these cases involved an express party choice of law, and all three upheld the choice of law provision. *Dugan v. Lewis*, 79 Tex. at 252 53, 14 S.W. at 1026; *Hi Fashion Wigs Profit Sharing Trust v. Hamilton Investment Trust*, 579 S.W.2d at 302; *Securities Investment Company v. Finance Acceptance Corp.*, 474 S.W.2d at 272.

105(1), the choice of law rule it embodies has been supplanted by express legislative act in the adoption of Texas UCC § 1.105(a). *See Pacific Products v. Great Western Plywood*, 528 S.W.2d 286, 291 (Tex.Civ.App. 1975). *Second, Griffin* did not involve an express party choice of law, as does the present case, and thus does not address the precise question presented here. *Finally*, the result in *Griffin* is grounded upon that court's conclusion that the parties did not really intend their contract to be performed in South Dakota. Since the characterization of South Dakota as the place of performance was the only basis for applying the law of that territory, upon the court's finding that the contract was in truth to be performed in Texas there remained no basis for applying South Dakota law.[12] Thus, the contrivance identified by the *Griffin* court was the party's *false* recitation that their contract was to be performed in South Dakota rather than in Texas. *See Lubbock Hotel Co. v. Guaranty Bank & Trust Co.*, 77 F.2d 152, 156 (5th Cir. 1935).

■ The "contrivance exception" to recognition of party choice of a particular state's law to apply to the contract thus does not arise simply because a purpose of the contract was to secure the benefit of that state's law and to avoid the usury law of another state that likewise had a reasonable relationship to the transaction. The exception is designed only to preclude the evasion or avoidance at will of the usury laws that would otherwise apply, by empowering the courts to ignore a party choice that would apply the law of a jurisdiction with no normal relation to the transaction. See Part II *supra*, esp. *Seeman v. Philadelphia Warehouse Co.*, *supra*, 274 U.S. at 408, 47 S.Ct. at 628; Nordstram & Ramerman, *supra*, 1969 Duke L.J. at 628. In short, the "contrivance exception" is nothing more than a restatement of the basic UCC choice of law rule: A party choice of law will be held to constitute *a contrivance when* (1) the actual contacts between the chosen jurisdiction and the transaction do not establish a "reasonable relation" or (2) when the *contacts themselves* are contrived in order to validate a party choice of law. Thus, that the present transaction is itself a loan disguised as a sale and leaseback, or that the parties so disguised their transaction or chose the law of Mississippi in order to avoid Texas usury laws, is wholly immaterial for choice of law purposes, so long as the contacts between the state of Mississippi and the transaction are real and not contrived.

■ Nothing in the record would suggest that the contacts between this transaction and the state of Mississippi are not real, or did not occur in the normal course of the transaction. Clearly, they are not so tenuous as to fall short of establishing a "reasonable relation" between this transaction and that state. Thus, the applicable choice of law rule, Texas UCC § 1.105(a), UCC § 1–105(1) (1962 version), requires that the parties' choice of law provision be honored, and that the law of Mississippi be applied.[13]

*Conclusion*

We therefore conclude that the appropriate choice of law rule in the context of this

---

**12.** As Pedersen and Cox have noted:

> Under traditional Texas choice of law rules, when the intention of the parties as to governing law is not expressed, the law of the place of contracting will be applied or, if the place of performance was other than the place of contracting, its law will be applicable. Thus, in *Griffin*, if the place of performance were actually South Dakota, the laws of that state should have been applicable. . . .

Pedersen & Cox, *supra*, 34 Sw.L.J. at 772 n.94.

**13.** We would note at this point that the honoring of the party choice of law in the context of this transaction does not offend fundamental public policy of the state of Texas. To be sure, it is the underlying policy of each state's usury laws to protect necessitous borrowers within its borders. Yet, as we have noted, we have found no Texas cases that have invalidated a party choice of law on grounds that the application of a foreign usury statute would violate public policy. Indeed, we would see the absence of such holdings in Texas cases as a reflection that Texas seeks to balance the policy of national commercial uniformity embodied in the UCC against the policy of parochial self-defense embodied in the state usury laws. The choice of law provision set out in Texas UCC § 1.105(a), UCC § 1–105(1) (1962 version), embodies the balance that is struck.

federal bankruptcy proceeding is that embodied in Texas UCC § 1.105(A), UCC § 1–105(1). The district court thus correctly held that Mississippi bears a "reasonable relation" to this transaction and that the party choice of Mississippi law should therefore be given effect. We therefore affirm its judgment in all respects, including its vacation of the bankruptcy court's award of attorneys' fees for further consideration in the light of Mississippi law. *See* note 7 *supra.*

Accordingly, and for the reasons delineated above, the judgment of the district court is in all regards AFFIRMED.

AFFIRMED.