**COLONIAL LEASING COMPANY OF NEW ENGLAND, INC., a Massachusetts corporation, dba Colonial-Pacific Leasing Company, Plaintiff and Respondent,**

v.

**LARSEN BROTHERS CONSTRUCTION CO., a general partnership; Michael Ray Larsen and Jody Earl Larsen, individuals; Michael Ray Larsen and Jody Earl Larsen Brothers Construction Company, Defendants and Appellants.**

No. 19384.

Supreme Court of Utah.

Dec. 22, 1986.

Royal K. Hunt, Salt Lake City, for defendants and appellants.

L. Edward Robbins, Sandy, for plaintiff and respondent.

STEWART, Associate Chief Justice.

Plaintiff Colonial Leasing Company transferred possession of a heavy piece of construction equipment called a crawler-loader to defendant Michael Ray Larsen pursuant to a document called a "lease." Larsen defaulted on the payments required by that document, and the plaintiff sued for damages. The trial court granted Colonial Leasing summary judgment on its claim for $27,716.10, the amount due under the document, less the proceeds of a sale of the equipment after plaintiff's repossession, plus costs and attorney fees. On appeal, Larsen argues that the document was a security agreement subject to the filing requirements of Article 9 of the Uniform Commercial Code. Since Colonial failed to comply with Article 9 requirements in disposing of the collateral, Larsen contends that Colonial was therefore precluded from recovering a deficiency judg-

ment. In granting summary judgment, the trial court stated in a minute entry: "Affidavits are not admissible and are barred by statute." We reverse and remand for further proceedings.

On September 23, 1977, Larsen obtained the crawler-loader from Colonial on a 60-month "lease." Colonial had purchased the loader from a supplier specifically for Larsen. The "lease" contains an integration clause and expressly requires return of the equipment upon expiration of the lease term. In May, 1980, Larsen defaulted and the equipment was repossessed and sold for $6,000.

Larsen filed affidavits in opposition to the motion for summary judgment stating that at the time the "lease" was entered into, it was the trade, custom, and usage in the business to accord lessees an option to purchase leased equipment at the end of the lease for its residual value and that Colonial had orally granted Larsen an option to purchase at the end of the "lease period" for the residual value of the equipment of approximately 10 percent.

■■■ The basic legal issue at stake here is whether the transaction was a lease or a sale of the equipment. When a commercial transaction for the acquisition of equipment is in the form of a lease but in fact is intended to be a sale, the payments, even though called "lease payments," are legally considered installment payments on the purchase price. At the end of such a "lease," there is either a nominal payment required to exercise the option to purchase or a final payment which, although sizeable in relation to the value of the goods, leaves the lessee no economic alternative but to exercise the option. *See, e.g., In re Vaillancourt*, 7 U.C.C.Rep.Serv. (Callaghan) 748 (Bankr.D.Me.1970); *In re Washington Processing Co.*, 3 U.C.C.Rep.Serv. (Callaghan) 475 (Bankr.S.D.Cal.1966).

In granting Colonial's motion for summary judgment, the trial court ruled that parol evidence of an option to buy was inadmissible, apparently because of the parol evidence rule and the statute of frauds. On appeal, Larsen claims that the trial court erred in ruling that Larsen's affidavits alleging the existence of an oral option to purchase the crawler-loader were inadmissible on the motion for summary judgment. Larsen also asserts that the terms of the lease itself indicate that the parties really intended a sale and security arrangement rather than a lease.

## I. STATUTE OF FRAUDS

■■ Rule 56(e) of the Utah Rules of Civil Procedure provides that affidavits in support of or opposition to a motion for summary judgment must set forth such facts as would be admissible in evidence at trial. *Norton v. Blackham*, 669 P.2d 857 (Utah 1983). Colonial claims that the Uniform Commercial Code, specifically U.C.A., 1953, § 70A–2–201(1) (1980 ed.), precludes evidence of an oral agreement between the parties. Section 70A–2–201(1) states:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker....

Colonial relies on *In re Financial Computer Systems, Inc.*, 474 F.2d 1258 (9th Cir. 1973), a case virtually identical to this case, for the proposition that § 70A–2–201(1) bars parol evidence intended to prove that an apparent lease transaction is in fact a sale. In that case, an equipment lessor tried to reclaim from the lessee's bankruptcy trustee two air-conditioning units which it had leased to the lessee. The trustee refused to turn over the units, claiming that the lease was in reality a security agreement and void because the lessor had not filed a financing statement. At the referee's hearing, the trustee was allowed to present evidence of an oral option to purchase the equipment at the end of the lease. On appeal, the court of appeals reversed, holding that admission of the oral evidence violated Cal.Comm.Code § 2201(1)

(West 1964), which is identical to § 70A-2-201(1).

■ The court, however, failed to consider the effect of Cal.Comm.Code § 2102, which states that "this division [Article 2 of the U.C.C.] applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or [a] present sale is intended to operate only as a security transaction." Our code has a virtually identical provision, § 70A-2-102, to the California provision. Whether the statute of frauds provision contained in § 70A-2-201(1) applies, therefore, is directly dependent on whether this transaction was a lease or an "unconditional contract to sell or [a] present sale." The trial court in the instant case did not adjudicate what the true nature of this transaction was.

■ Section 70A-2-201(1) is not the only statute of frauds which might apply to this case. U.C.A., 1953, § 25-5-4 (1984 ed.) states:

> In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, is in writing subscribed by the party to be charged therewith: (1) every agreement that by its terms is not to be performed within one year from the making thereof.

Even if applicable generally to transactions of the type involved in this case, § 25-5-4(1) does not exclude the oral evidence in this case. Statutes of frauds are intended to bar enforcement of certain agreements that the law requires to be memorialized in writing. *E.g., Howell v. Inland Empire Paper Co.,* 28 Wash.App. 494, 624 P.2d 739 (1981). But statutes of fraud do not prevent a party from proving the true nature of the agreement between the parties when that is what is at issue rather than enforceability. *Golden v. Golden,* 273 Or. 506, 510, 541 P.2d 1397, 1399 (1975). *See also Bennett Leasing Co. v. Ellison,* 15 Utah 2d 72, 387 P.2d 246 (1963). In accord with that rule, the United States Court of Appeals for the Fifth Circuit in *Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Development Co.,* 642 F.2d 744 (5th Cir.1981),

held that oral evidence of an option was admissible to shed light on the nature of an agreement between the parties, and specifically to show that it was a sale. *Id.* at 746 n. 5. *Woods-Tucker* also expressly disavowed the holding in *In re Financial Computer Systems. See also Bennett Leasing Co. v. Ellison,* 15 Utah 2d 72, 387 P.2d 246, where this Court held that even though an unsigned automobile lease for a term of twenty-four months was unenforceable, that the underlying oral agreement between the parties was admissible to show the rental value of the automobile in an action for quantum meruit.

■ In this case, the statute of frauds did not bar Larsen from proving what the parties had intended, since Larsen sought only to obtain the protections of Article 9 of the Uniform Commercial Code, not to enforce an unwritten term of the contract. Nor was Colonial's action for a deficiency judgment on the lease payments an attempt to enforce the oral option against Larsen.

## II. PAROL EVIDENCE RULE

■ The Parol Evidence Rule serves to exclude evidence of terms in addition to those in a written integrated agreement. "[T]he rule operates in the absence of fraud to exclude contemporaneous conversations, statements, or representations offered for the purpose of varying or adding to the terms of an *integrated* contract." *Union Bank v. Swenson,* 707 P.2d 663, 665 (Utah 1985). *See also Eie v. St. Benedict's Hospital,* 638 P.2d 1190, 1194 (Utah 1981); *Bullfrog Marina, Inc. v. Lentz,* 28 Utah 2d 261, 266, 501 P.2d 266, 270 (1972); Corbin, *The Parol Evidence Rule,* 53 Yale L.J. 603, 609 (1944). Because the parol evidence rule applies only if the writing was intended by the parties to represent the full and complete agreement of the parties, the trial court must first determine whether the writing was intended to be an integrated agreement. *Union Bank,* 707 P.2d at 665; *Eie,* 638 P.2d at 1194; *Bullfrog Marina,* 28

Utah 2d at 266, 501 P.2d at 270. In some cases, it will be necessary for a trial judge to rule on the issue of integration as a preliminary or foundational matter. *See Halloran-Judge Trust Co. v. Heath*, 70 Utah 124, 258 P. 342 (1927).

■ In this case, the trial judge did not expressly rule whether the purported lease was an integrated writing. Since the affidavits raise a factual issue as to whether the contract was in fact intended to be integrated, the trial judge will need to hear the evidence on that issue. Indeed, the need for parol evidence is also suggested by the nature and terms of the lease itself and the surrounding circumstances.

■ Larsen also argues that the terms of the lease itself indicate that it was meant not as a true lease, but as a security agreement for the sale of the property. In some cases, such a judgment may be apparent from the face of the document, but in other cases, the basic nature of the agreement, judging solely from its contents, may be ambiguous. It is the general rule that if an agreement is ambiguous because of lack of clarity in the meaning of particular terms, it is subject to parol evidence as to what the parties intended with respect to those terms. *Faulkner v. Farnsworth*, 665 P.2d 1292 (Utah 1983). *See also Rainier National Bank v. Inland Machinery Co.*, 29 Wash.App. 725, 631 P.2d 389 (1981). We hold that that rule also applies where the character of the written agreement itself is ambiguous even though its specific terms are not ambiguous. *Bown v. Loveland*, 678 P.2d 292, 297 (Utah 1984); *W.M. Barnes Co. v. Sohio Natural Resources Co.*, 627 P.2d 56, 59 (Utah 1981); *Hansen v. Kohler*, 550 P.2d 186, 188–89 (Utah 1976); *Woods-Tucker Leasing Corp. v. Hutheson-Ingram*, 642 F.2d 744 (5th Cir. 1981).

■ Numerous factors bear on determining whether the terms of an agreement show that it was meant to be a lease or a security agreement. Among others, those factors are whether (1) the lessor is a financier, (2) the lessee is required to insure the goods in favor of the lessor, (3) the lessee bears the risk of loss or damage, (4) the lessee is to pay the taxes, repairs, and maintenance, (5) the agreement establishes default provisions governing acceleration and resale, (6) a substantial nonrefundable deposit is required, (7) the goods are to be selected from a third party by the lessee, (8) the rental payments were equivalent to the costs of the goods plus interest, (9) the lessor lacks facilities to store or retake the goods, (10) the lease may be discounted with a bank, (11) the warranties usually found in leases are omitted, and (12) the goods or fixtures are impractical to remove. J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, at 882–83 (2d ed. 1980). To the extent the above factors are terms of the lease agreement, their probativeness will depend in some instances on how they are phrased.

Many of these factors are present in this lease. Under the lease, Larsen was to select the equipment and choose what supplier Colonial would obtain it from. All warranties by Colonial were excluded. Larsen was required to insure the crawler-loader in favor of Colonial and to pay all taxes. He also bore the risk of loss. The lease contained default provisions governing acceleration and resale. The trial judge in this case did not address what these provisions indicated as to the intent of the parties or whether the terms were ambiguous, therefore necessitating the admission of parol evidence to ascertain the intent of the parties.

Larsen relies heavily on *FMA Financial Corp. v. Pro-Printers*, 590 P.2d 803 (Utah 1979), for the proposition that the oral evidence should have been admitted in this case. *FMA* recognizes that despite an integration clause in the form lease involved in that case, the lease was in fact a sale. At trial, FMA admitted that it routinely offered lessees an option to purchase the

equipment at the end of the lease term. The Court held that this admission rendered the integration clause ineffective and that the oral evidence was admissible. In any event, the agreement in this case, for an oral option, if any, is not inconsistent with the express terms of the agreement. Although no such admission has been made in the present case, appellant has alleged an oral option consistent with industry custom and trade in the affidavits, and that is sufficient to create an issue of fact.

Only when contract terms are complete, clear, and unambiguous can they be interpreted by the judge on a motion for summary judgment. *Morris v. Mountain States Telephone & Telegraph Co.*, 658 P.2d 1199, 1201 (Utah 1983). If the evidence as to the terms of an agreement is in conflict, the intent of the parties as to the terms of the agreement is to be determined by the jury. *Id.; Amjacs Interwest, Inc. v. Design Associates*, 635 P.2d 53, 55 (Utah 1981). In sum, whether a lease was intended as security for a sale is a question to be determined on the facts of each case, as is the issue of whether the nature of the document raises questions of fact that preclude summary judgment. *FMA Financial Corp.*, 590 P.2d at 805.

Reversed and remanded. Costs to appellant.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ.

HOWE, J., concurs in the result.