MATTHEW R. AND JILL WHITE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
White v. Commissioner
Docket No. 26101-89
United States Tax Court
T.C. Memo 1991-552; 1991 Tax Ct. Memo LEXIS 600; 62 T.C.M. (CCH) 1181; T.C.M. (RIA) 91552; November 5, 1991, Filed *600 Decision will be entered under Rule 155. L. S. McCullough, Jr. and Craig F. McCullough, for the petitioners. Joel A. Lopata, for the respondent. KORNER, Judge. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION By statutory notice dated August 2, 1989, respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6661
1982
$ 22,017
$ 2,827
$ 5,504
1983
62,618 -- 15,655
1984
24,075 -- 6,019
1986
34,927 -- 8,732
Following concessions, [2] the issues for our decision are: (1) Whether respondent is precluded from assessing a deficiency against petitioners without first conducting a partnership level audit; (2) whether respondent erred in determining that amounts paid by *601 a partnership as construction costs on a home represented cash distributions to petitioners pursuant to section 731(a); (3) whether the statute of limitations bars respondent from assessing a deficiency for tax years 1982 or 1984; (4) whether respondent erred in determining that petitioners are liable for additions to tax for substantial understatement of income tax liability for each of the years at issue; and (5) whether respondent erred in determining that petitioners are liable for an addition to tax for failure to timely file their 1982 tax return. *602 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Matthew R. and Jill White, husband and wife, resided in Salt Lake City, Utah, when they filed their petition herein. Petitioners timely filed joint Federal income tax returns for calendar years 1983, 1984, and 1986. Their 1982 joint tax return was filed on October 20, 1983, which was beyond the due date of the return plus any extensions. In 1979, petitioners purchased a parcel of undeveloped real property located at 5136 Haven Lane [3] in Salt Lake City. Legal title to the property was held by a trust, but for purposes of this case, the parties have stipulated that the trust should be disregarded and that petitioners should be treated as jointly owning any interest in the property held by the trust. On February *603 19, 1981, the M & J Investment Company (the partnership) [4] was formed as a limited partnership pursuant to the laws of the State of Utah. Petitioners were the general partners and each held a 5-percent interest in this family partnership. Through Jeffery Thomas as custodian under the Utah Gifts to Minors Act, petitioners' four children were the limited partners and together held the other 90-percent interest. The partnership was initially capitalized with $ 26,000. Both business and personal assets were subsequently acquired by the partnership, either directly or through contributions made by petitioners. The partnership started operations sometime in 1982, and its assets ultimately included a small stock transfer agency, securities, boats, a family cabin, and snowmobiles. In 1982, construction was begun on a residential home and other improvements upon the vacant Haven Lane property. Construction took several years and the *604 total cost of the home, including the cost of the real property, was in excess of $ 850,000. Approximately 59 percent of the construction costs were paid by the partnership while the remaining costs were paid by petitioners directly. The partnership paid its part of the construction costs directly to the various contractors. On or about August 5, 1983, petitioners borrowed $ 300,000 from Zions First National Bank (the bank) to finance a portion of the construction costs paid by them. To secure that loan, petitioners, in their individual capacities, granted the bank a security interest in the entire Haven Lane property by trust deed. As a result, the bank understood that it had a first mortgage on the property. Petitioners, in refinancing the mortgage, executed two further trust deeds in favor of the bank on November 19, 1987, and August 30, 1989. Both of these trust deeds were also executed by petitioners in their individual capacities. [5]
*605 In December 1983, a warranty deed was prepared which purported to convey an interest in the property from petitioners to the partnership. The deed was executed; but it contained no legal description of the property, was not acknowledged, and was not recorded. In December 1989, a quitclaim deed was prepared which conveyed a 59-percent interest in the property to the partnership. On its 1982 partnership return, the partnership reported that its assets included an investment in real estate of $ 120,221. The parties agree that this figure represents the amount paid by the partnership in 1982 on construction costs. The partnership's 1983 and 1984 original returns did not report the partnership as owning any real estate. Instead, certain amounts were reported as distributions to petitioners, and the parties agree that the amount of the distribution for 1983 also includes the $ 120,221 expended in 1982. The partnership's amended 1983 and 1984 returns, as well as its 1985 and 1986 returns, all filed after respondent's audit began, reflect that the partnership's assets included real estate assets in the amounts expended as construction costs during those years. In amending the 1983 *606 and 1984 returns, the partnership reported that it distributed the same amounts as reported in the original return, but reported that there were contributions to capital in those years equal to the construction costs reported as distributed. Petitioners and their children moved into the home in 1983 and lived there throughout the remaining years at issue. No lease agreement existed between petitioners and the partnership, and no rent payments were ever made to the partnership. Petitioners deducted in full the amounts paid as real estate taxes on their 1982 through 1986 individual tax returns. Respondent determined that the amounts expended by the partnership as construction costs were not expended to acquire a partnership asset. Rather, he determined that those amounts constituted cash distributions to petitioners pursuant to section 731(a), resulting in unreported capital gains in the following amounts: [6]
Year
Amount
1982
$ 48,398
1983
120,352
1984
47,172
1986
78,567
Apparently due to mathematical errors in the partnership's determination of petitioners' bases in the partnership, the parties now stipulate that if the amounts paid by the partnership as construction *607 costs are determined to be taxable under section 731(a), the following distributions will result in the following unreported capital gains: Unreported Capital
Year
Distribution
Gain
1982
$ 109,718
$ 43,887
1983
157,833
63,133
1984
137,590
55,036
1986
212,665
85,066
Respondent also determined that petitioners were liable for additions to tax for substantial understatement of income tax liability for each of the years at issue under section 6661, and for failure to timely file their 1982 tax return under section 6651(a)(1). OPINION 1. Applicability of TEFRA
The first issue for decision is whether respondent is barred from assessing a tax against petitioners in the absence of partnership level proceedings. *608 Sections 6221 through 6233 provide for unified partnership level audit and litigation procedures. Unless otherwise excepted, the tax treatment of any partnership item is determined at the partnership level. Sec. 6221. Petitioners claim that since respondent has not conducted a partnership level audit, he is precluded from adjusting items reported consistently by them on their individual tax returns. Respondent, on the other hand, argues that the partnership is excepted from the unified procedures because it is a "small partnership" as defined in section 6231(a)(1)(B), and no election was made to have the unified procedures apply. See sec. 6231(a)(1)(B)(ii). [7]
*609 To fall within the small partnership exception, the partnership must have, inter alia, 10 or fewer partners each of whom is a natural person or an estate. Sec. 6231(a)(1)(B)(i)(I). Consequently, the exception is not applicable if any partner in a partnership is a "pass-thru partner" other than an estate. Sec. 301.6231(a)(1)-1T(a)(2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987). A "pass-thru partner" is defined as "a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership with respect to which proceedings under this subchapter are conducted." Sec. 6231(a)(9) (emphasis added). In the instant matter, the partnership agreement was executed by petitioners, as general partners, and by Jeffery Thomas "as Custodian under the Utah Gift to Minors Act for" each of petitioners' children, as limited partners. At issue, then, is whether the definition of a "pass-thru partner" encompasses a custodian. Utah law provides that the children are indefeasibly vested with legal title in their limited partnership interests. Utah Code Ann. sec. 75-5-603(1) (1978). Thus, *610 the children were partners while the custodian was not. Sec. 6231(a)(2). In contrast, each person specifically defined as a "pass-thru partner" in section 6231(a)(9) would hold legal title to the partnership interest. We believe this distinction is determinative and excepts a custodian from the definition of a "pass-thru partner." We hold that the partnership in the instant matter falls within the small partnership exception to the unified audit and litigation procedures. See sec. 6231(a)(1)(B). Since petitioners presented no evidence that an election was made to have the unified procedures apply to any of the years before us, we reject their argument that respondent is prohibited from making an assessment without first auditing the partnership. See sec. 6231(a)(1)(B)(ii); Rule 142(a). 2. Section 731(a) Distributions?
The second issue for decision is whether respondent erred in determining that the amounts paid by the partnership as construction costs on the Haven Lane property constituted cash distributions to petitioners which generated capital gains pursuant to section 731(a). Respondent's determination in his notice of deficiency is presumed correct and petitioners *611 bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). Initially, petitioners claim that the partnership acquired an undivided interest in the property when it paid 59 percent of the construction costs. Although title to the property was in their names, petitioners testified that they intended for the partnership to acquire this interest. In support, they cite Utah law and the partnership agreement, which both permitted record title to partnership property to be held in a general partner's name. We disagree with petitioners' contentions. Prior to construction, the property was held by petitioners alone. Petitioners do not claim the partnership acquired merely an interest in the improvements; they claim it acquired a 59-percent interest in the entire property. Consequently, petitioners had to relinquish part of their beneficial interest in the property in order for the partnership to acquire its alleged interest. [8]Utah Code Ann. sec. 57-1-1(3) (1990) (generally, real property includes improvements thereon). The circumstantial evidence in this case, however, indicates that petitioners considered the entire property *612 a personal asset rather than an asset owned in part by them and in part by the partnership. On three separate occasions, petitioners, in their individual capacities (or as trustees), executed trust deeds purporting to transfer a security interest in the entire property to the bank in order to obtain (or refinance) a personal loan. They also deducted the full amounts paid as real estate taxes on their individual tax returns. Further, if the partnership had in fact provided them with housing, petitioners did not pay rent to the partnership for the use of that property, nor did they include in income the monetary equivalent of the benefit they would have received. [9]
*613 Petitioners disagree with the above analysis and cite Utah law which presumes, unless the contrary intention appears, that property acquired with partnership funds is partnership property. See Utah Code Ann. sec. 48-1-5 (1989). Petitioners' argument, however, assumes that someone, presumably the partnership, "acquired" a legal interest in the property when the partnership paid construction costs. As noted above, the only way the partnership could have acquired property was if petitioners had relinquished an interest in the property. They have not persuaded us they did so. Rule 142(a). Petitioners next argue that even if the payments of construction costs were distributions by the partnership to petitioners, the distributions would not be taxable under section 731(a) because they were not distributions of money. Petitioners claim that since the partnership paid the construction costs directly to the contractors, rather than to petitioners, they were nontaxable distributions. Section 731(a)(1), in part, provides: In the case of a distribution by a partnership to a partner -- (1) gain shall not be recognized to such partner, except to the extent that any money distributed *614 exceeds the adjusted basis of such partner's interest * * * [Emphasis added.]
As noted above, the partnership did not obtain an interest in the property. Thus, the only distributions made by the partnership in this case were of money. If petitioners are arguing that a partner must actually receive cash for a distribution to be taxable, their argument finds no support in the statute. On the contrary, section 731(a)(1) contemplates constructive money distributions. See, e.g., sec. 752(b) (reduction in partner's liabilities by reason of a partnership's assumption of those liabilities is a cash distribution). Petitioners have failed to persuade us that respondent erred in determining that the cash payments made on their behalf were taxable distributions under section 731(a). Respondent's determination of unreported capital gains for each of the years at issue, as adjusted by stipulation, is therefore sustained. 3. Statute of Limitations
The third issue is whether the statute of limitations prevents respondent from making an assessment for tax years 1982 and 1984. [10] Generally, respondent must make an assessment within 3 years after the date on which a taxpayer files *615 his return. Sec. 6501(a). However, for purposes of an income tax return, section 6501(e)(1)(A) provides, inter alia, that: If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph -- * * * (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.
Respondent bears the burden of showing that the extended statute of limitations applies, Reis v. Commissioner, 1 T.C. 9, 13 (1942), *616 affd. 142 F.2d 900 (6th Cir. 1944), but the statute "must receive strict construction in [his] favor." E. I. Dupont de Nemours & Co. v. Davis, 264 U.S. 456, 462, 68 L. Ed. 788, 44 S. Ct. 364 (1924); Thoburn v. Commissioner, 95 T.C. 132, 146-147 (1990). Initially, we consider whether petitioners' 1982 and 1984 returns omitted in excess of 25 percent of the amounts of gross income stated in those returns. Respondent argues that the full amount of the distributions from the partnership to petitioners must be considered when determining the amount of gross income omitted from a return. Petitioners contend that only 40 percent of the distributions, the amount of unreported capital gains, should be considered when making this determination. Petitioners' contention is without merit. The computation under section 6501(e) requires consideration of the full 100 percent they received as capital gains. Burbage v. Commissioner, 82 T.C. 546, 558 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Roschuni v. Commissioner, 44 T.C. 80, 83 (1965). Gross income includes the entire amount received by a taxpayer as capital *617 gains. Sec. 61. Section 1202(a) merely provides a deduction from gross income of 60 percent of net capital gains. The unreported income in each of the years 1982 and 1984 was more than 25 percent of the reported gross income. We next consider respondent's claim that petitioners' returns did not provide adequate disclosure of the omitted distributions. See sec. 6501(e)(1)(A)(ii). Petitioners argue that sufficient disclosure was provided when their individual returns are read in conjunction with the partnership's returns. Whether a taxpayer's returns have provided adequate disclosure for purposes of section 6501(e) is a question of fact. Rutland v. Commissioner, 89 T.C. 1137, 1152 (1987). In making this finding, partnership returns are considered together with individual returns and are treated as part of them. Rose v. Commissioner, 24 T.C. 755, 769 (1955). Adequate disclosure is not provided where "the return on its face provides no clue to the existence of the omitted item." Colony, Inc. v. Commissioner, 357 U.S. 28, 36, 2 L. Ed. 2d 1119, 78 S. Ct. 1033 (1958), revg. 244 F.2d 75 (6th Cir. 1957), affg. 26 T.C. 30 (1956). *618 It means providing more than "simply a 'clue' which would be sufficient to intrigue a Sherlock Holmes," but does not rise to the level of requiring "a detailed revelation of each and every underlying fact." George Edward Quick Trust v. Commissioner, 54 T.C. 1336, 1347 (1970), affd. 444 F.2d 90 (8th Cir. 1971). The partnership's 1982 tax return reported that it had real estate investment assets of $ 120,221, while its original 1984 return did not report any real estate assets. As reported in 1982, it appeared that the partnership acquired real estate assets from a third party. However, if petitioners had truly intended for the partnership to own an interest in the property in the manner claimed, their individual returns should have reflected income from the free use of that property. Further, the partnership would have reported a deduction for part of the real estate taxes paid, since petitioner husband testified that the partnership paid part of those taxes. In fact, petitioners' 1982 and 1984 joint returns did not disclose any distributions to them with respect to the property. Based on the facts and circumstances, we hold that petitioners' *619 1982 and 1984 returns did not provide sufficient notice for purposes of section 6501(e)(1)(A)(ii) because those returns failed to disclose the omitted items. We therefore hold that respondent is not barred by the statute of limitations from making an assessment for 1982 or 1984. 4. Section 6661 Additions to Tax
The next issue for decision is whether petitioners are liable for additions to tax for substantial understatement of income tax pursuant to section 6661(a). An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1)(A). The amount of the understatement is reduced by the portion of the understatement attributable to an item for which the taxpayer is able to show that there is substantial authority for the tax position taken, or attributable to an item for which the taxpayer adequately disclosed the relevant facts affecting the item's tax treatment in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Petitioners bear the burden of proof with respect to this issue. Rule 142(a). For the same reasons noted in supra issue 3, with respect to section *620 6501(e), petitioners have failed to persuade us that they made adequate disclosure for purposes of section 6661. Furthermore, they have failed to persuade us that they had substantial authority for the positions they took with regard to the distributions. We agree with petitioners' allegations that the partnership "could" hold property, even in a general partner's name. However, we are not persuaded that petitioners had substantial authority for the position they took when the evidence so clearly shows that the partnership did not so hold the property at issue. Respondent's determination of additions to tax pursuant to section 6661 for each of the years at issue is sustained. 5. Failure To File
The final issue is whether petitioners are liable for an addition to tax pursuant to section 6651(a)(1) for failing to timely file their 1982 tax return. Section 6651(a)(1) is not applicable if the untimely filing was due to reasonable cause and not willful neglect. Petitioners bear the burden of proof as to this issue. Rule 142(a). At trial, petitioner husband testified that the return was filed late because petitioners' accountant had been unable to accumulate all the information *621 necessary to file the return. No explanation was given concerning why the information could not have been accumulated earlier, or why no attempt was apparently made to secure an extension of time for filing. Petitioners have failed to persuade us that they had "reasonable" cause for not filing their return on time. Rule 142(a). We therefore sustain respondent's determination on this issue. Due to concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Apparently due to errors in reporting petitioners' bases in a partnership, discovered subsequent to the issuance of the statutory notice, the parties stipulate that a Rule 155 computation will be required regardless of the outcome of this Opinion. Additionally, in their petition, petitioners claimed that respondent's determination was arbitrary. However, they did not address this issue on brief; we therefore deem it abandoned. Wilcox v. Commissioner, 848 F.2d 1007, 1008↩ n. 2 (9th Cir. 1988), affg. a Memorandum Opinion of this Court.
3. The record also refers to this property as 5136 Cottonwood Lane; the parties stipulate that this is the same parcel of property.↩
4. The partnership is also referred to in the record as the J & M Investment Company.↩
5. These two deeds were actually executed by petitioners in their capacity as trustees of the trust, but see supra↩ regarding the ownership of the property by petitioners.
6. Respondent's determination resulted in downward adjustments in petitioners' bases in the partnership. Consequently, respondent also determined that cash distributions not involved in the building of the house, which petitioners had reported to be nontaxable, were in fact taxable.↩
7. Sec. 6231(a)(1), in part, provides: (B) EXCEPTION FOR SMALL PARTNERSHIPS. -- (i) In General. -- The term "partnership" shall not include any partnership if -- (I) such partnership has 10 or fewer partners each of whom is a natural person (other than a nonresident alien) or an estate, and (II) each partner's share of each partnership item is the same as his share of every other item. For purposes of the preceding sentence, a husband and wife (and their estates) shall be treated as 1 partner. (ii) Election To Have Subchapter Apply. -- A partnership (within the meaning of subparagraph (A)) may for any taxable year elect to have clause (i) not apply. Such election shall apply for such taxable year and all subsequent taxable years unless revoked with the consent of the Secretary.↩
8. Both parties cite the Utah statute of frauds and claim that the 1983 warranty deed supports their argument concerning whether the partnership acquired an interest in the property. However, the Utah statute of frauds does not prevent a party from proving the true nature of an agreement when that is at issue, rather than enforceability. Colonial Leasing Co. v. Larsen Bros. Construction, 731 P.2d 483↩ (Utah 1986). In addition, as we have found, the deed was neither acknowledged or recorded, and contained no description of the property. It was of questionable legal efficacy to convey title. 9. Petitioners argue that no rent was paid because all the partners benefitted from the arrangement. They fail to explain, however, how petitioners' children could have benefitted if partnership income was used to discharge their parents' support obligation to provide housing. That would obviously give rise to taxable income attributable to petitioners. Cf. Helvering v. Stokes, 296 U.S. 551, 80 L. Ed. 389, 56 S. Ct. 308↩ (1935).
10. The statute of limitations for 1983 was extended by agreement.↩