## BELL *v.* TINDALL.

Nov. 10, 1952

No. 38525          7 Adv. S. 3          60 So. 2d 801

*Robertson, Luckett & Robertson,* for appellant.

*Brewer & Brewer,* for appellee.

ROBERDS, P. J.

Bell, in his bill herein, asserted Tindall had loaned him money and contracted and collected more than eight per cent interest, thereby forfeiting all interest, as provided in Section 36, Miss. Code 1942.

Tindall admitted he provided the money but denied it was a loan. He said he bought Bell's notes at a discount. That is the only question to be determined. If the transaction was a loan, more than eight per cent interest was charged; if Tindall purchased notes at a discount he had a right to do that, even though the amounts evidenced by the notes was greater than the

principal advanced by Tindall, plus interest thereon at eight per cent per annum. The chancellor dismissed the bill.

These are the events, set out in their sequence, bearing upon the question:

In November, 1944, Amos Bell, Jr., appellant, a member of the negro race, desired to purchase a certain eighty acres of land located in Tunica County, Mississippi, from Mr. and Mrs. Mosley. The Mosleys orally agreed to sell Bell the land for $5,000.00 cash. Bell could only pay $750.00 cash. He set about to try to borrow the remainder —$4,250.00. He contacted Mr. H. K. Gish of Memphis, who was in the real estate business. He explained his proposition to Mr. Gish, who gave Bell to understand he might be able to work out a financial arrangement by which Bell could buy the land. Gish said he told Bell that would cost him $1,000.00. In other words, the notes and trust deed on the land securing them would be for $5,-250.00 instead of $4,250.00, the balance needed by Bell. Bell said he thought the notes and trust deed would be for $4,250.00.

In any event, shortly thereafter, the exact time not being shown, Gish approached appellee Tindall about the matter. Gish said he saw Tindall ''After I got the deal going. Not the same day Amos was there.'' Tindall lived in Memphis, and, among other things, was a money lender. Gish and Tindall went to Tunica County to inspect the land. Bell met them at Dundee and carried them over it. Bell was assured by Gish the money could be had to close the land purchase.

On December 11, 1944, Mosley and wife entered into a written contract with Bell in which they agreed to sell to Bell and he agreed to purchase from them the eighty acres of land for $5,000.00 cash. Bell then paid the sellers $750.00. The contract recited that Mrs. Mosley had the title under a state patent and that Bell wanted that title confirmed, and he agreed to stand the expense of carry-

ing the matter through the chancery court for that purpose. Bell was to be given possession January 15, 1945. If the title should be confirmed the deal would be closed within thirty days, Bell paying the remainder of the purchase price of $4,250.00. If the court should refuse to confirm the title, then the sale would be off, but Bell would remain on the land as tenant for 1945 at a reasonable rental, to be agreed upon by the parties, or arbiters, the Mosleys retaining the $750.00 as security for the rent.

Dulaney and Bell, attorneys of Tunica, were engaged to prosecute the chancery suit.

It appears that about this time Mr. Gish conferred with Mr. L. E. Farley, an attorney of Memphis, with a view of his preparing the papers and passing upon the title. Farley got from Gish the denominations and maturities and rate of interest of the notes. Gish testified he told Farley that Mr. Tindall ''was the debenture holder'' of the papers. Gish was asked ''Q. You were frank and honest with Mr. Tindall? A. Yes, sir. Q. You told him the facts of the transaction? A. All I told him was the set-up I had on the notes, because I didn't know about the title myself. All I knew about the title was what I learned through Mr. Farley.'' It is shown that when Tindall agreed to put up the $4,500.00 he did so with the understanding the notes were to aggregate, principal, $5,250.00, and bear six per cent interest. In other words, Tindall was to make a profit out of the transaction of $750.00, in addition to the interest. The $4,500.00 was to be used in paying $4,250.00, balance of purchase price, and the other $250.00 to be used in paying recording fees and balance to be divided between Gish and Farley.

Farley prepared the notes. They are dated December 19, 1944. There were five notes of $600.00 each, and one note for $2,250.00, all bearing interest at the rate of six per cent per annum, and payable on or before December 19th in each year beginning December 19, 1945. No per-

son is named as payee in the notes. They are payable to "bearer".

Farley also prepared a deed of trust on the land securing the notes. It is dated December 19, 1944. However, it was acknowledged January 24, 1945, and presumably was executed at the time of the acknowledgment, as were the notes, for the trust deed recites that the notes were executed "concurrently with this deed of trust . . . . ." The trust deed recited the transaction would be governed by the laws of Mississippi.

On January 24, 1945, date of execution of the trust deed and notes, Mr. Tindall gave to Mr. Farley his check for $4,500.00. It was payable to Mr. Farley or his order.

On February 21, 1945, the chancery court of Tunica County, by final decree, confirmed in Beatrice Mosley title to the eighty acres of land.

W. P. Mosley and his wife Beatrice Mosley executed a deed to Amos Bell, Jr., the appellant. It is dated April 7, 1945, but was acknowledged in Bolivar County, Miss., residence of grantors, April 10, 1945. It recites a consideration of $5,000.00. Apparently the deed was sent to Mr. Farley.

On April 16, 1945, Mr. Farley disbursed the $4,500.00 furnished by Tindall. His check, dated that day, was sent to Dulaney & Bell, attorneys, for $4,250.00. He paid the recording fees and Gish's commission of $150.00, and retained the balance for his legal services.

The Mosley deed was filed for record in Tunica County May 12, 1945, and the trust deed to Tindall was filed immediately thereafter.

Appellant paid to Tindall all of the first five annual installment notes each for $600.00 principal, together with the interest thereon, but did not pay the last note for $2,250.00 due December 19, 1950. He did not have sufficient money for that purpose. He went to the Tindall office to get, and was there given, the amount of the principal and accumulated interest on that note, and,

according to his testimony, that was the first knowledge he had that this note stipulated so large an amount. He conferred with Mr. Gish with the purpose of getting this refinanced, and Mr. Gish told him he thought that might be done, but it would cost Bell $600.00. Thereafter the bill in this cause was filed by Bell, asserting that the debt to Tindall was usurious, in that a charge of more than eight per cent interest per annum had been contracted for and collected.

Was Mr. Tindall a lender of the money or a purchaser of notes at a discount? He repeatedly said he did not lend the money—that he purchased the notes—but that is the very question the Court must deduce from the circumstances. This (Hn 1) Court has announced many times it will look through the form to the substance of the transaction to determine whether usury has been charged or collected. We think Mr. Tindall was the lender of the money. (Hn 2) Mr. Gish did not assure Bell he would be furnished the money until he, Gish, had conferred with Tindall, and he and Tindall had inspected the land offered as security. This was before the notes and trust deed had been prepared by Mr. Farley. Naturally Mr. Tindall, before he would agree to put up the money, had information as to the amounts and maturities of the notes and the interest they were to bear. Mr. Tindall knew the notes would aggregate $5,250.00 and he knew he was advancing only $4,500.00; that, in addition to the interest, he was making a profit of $750.00. The notes did not name any person as payee; they were simply payable to "bearer". However, the deed of trust named Tindall as the beneficiary therein and the holder of the secured notes. The trust deed designated Tindall as the payee in the notes. The trust deed recites it was executed to secure the payment of the notes "executed concurrently with this deed of trust in the principal sum of Five Thousand Two Hundred and Fifty and no/100 Dollars . . . ."evidenced by five notes each for $600.00 and one

for $2,250.00. Gish never owned, or had title to, the notes. His name does not appear in them. He never endorsed or assigned them. Upon their first issuance as legal obligations they were payable to and were the property of Tindall. He did not purchase them from Gish or anyone else; he was the original payee and beneficiary. Gish never put up a dime. Gish told Farley, in giving him the information for preparation of the papers, that Tindall was the "debenture holder". He also said he was frank and honest with Tindall, and told him the "set-up of the notes", as, indeed, any person advancing the money would have demanded. Tindall never discounted notes held by some person other than the maker. He was the original and only payee and holder. He knew, as a matter of reason, the money he was advancing was to be used, in the first instance, in closing this loan. Gish had arranged with him for the money for that very purpose. The papers, with Tindall as the original payee, were delivered to him; they were kept by him and paid by the maker as they became due until the last note was due, and, as the notes were paid, he delivered them to the original makers. Tindall knew he was paying out only $4,500.00 and the aggregate principal of the notes was $5,250.00. He knew he was making a profit of $750.00 in addition to the interest on a loan of $4,500.00.

In 55 Am. Jur., pg. 345, Sec. 27, this rule is announced: "While paper for which value has once been given can ordinarily be discounted at any rate, it is clear that the discount of paper for which no value has previously been given is the first value for such paper, and is usurious where it exceeds the rate allowed by usury statutes relating to loans, at least if made with knowledge that no value has previously been given, and, according to some authorities, even where made without such knowledge."

Again, in 165 A. L. R., pg. 642, the annotator deduces the rule in these words: "If a note is offered for dis-

count by the maker, it is plainly usurious, as between him and the party to whom it is delivered, if the discount from its face value is greater than the rate of interest allowed upon a loan. 1 Daniel, Negotiable Instruments, Sec. 753. It is a general rule that where a commercial instrument or other transferable chose in action is discounted in a transaction wherein it is received from the maker, or previous to negotiation for value, it constitutes the maker's obligation, . . . the sale or transfer of which, at a discount in excess of lawful interest, is in legal effect a usurious loan''. The facts and circumstances, and, in our opinion, the inescapable conclusions therefrom, bring appellee within the stated rules.

(**Hn 3**) Interest at a greater rate than eight, but less than twenty, per cent having been stipulated for and collected, all interest must be forfeited. In such case the interest which has been paid should be deducted from the remaining principal if the debt has not been entirely paid. Hardin v. Grenada Bank, 182 Miss. 689, 180 So. 805. Tindall advanced $4,500.00. Bell has paid $3,000.00 on the principal and $541.60 usurious interest, a total of $3,541.60, which, deducted from the $4,500.00, leaves Bell owing Tindall the sum of $958.40. Judgment will be rendered here against Bell for that sum, bearing six per cent interest per annum from date of judgment, with leave of thirty days from final action of this Court in this case within which to pay the judgment; failing in which Tindall may foreclose his trust deed or otherwise enforce his lien.

(**Hn 4**) Appellant urges that he should not be charged with the $250.00 used to pay Gish and Farley and recording fees. Bell agreed to payment of these fees and, under the circumstances here, they do not come within the usury statute. Johnson v. Carter, 203 Miss. 38, 33 So. 2d 296; Tower Underwriters, Inc. v. Lott, 210 Miss. 389, 49 So. 2d 704.

Reversed in part and affirmed in part and judgment here.

*Alexander, Hall, Holmes* and *Arrington, JJ.,* concur.

