438

440 P.2d 319

Robert K. ALTHERR and Pauline Lawanda
Altherr, Appellants,

v.

WILSHIRE MORTGAGE CORPORATION,
Appellee.

No. I CA–CIV 363.

Court of Appeals of Arizona.

April 25, 1968.

Review Granted July 2, 1968.

Leibsohn & Goldstein, by Philip T. Goldstein, Phoenix, for appellants.

Hughes, Hughes & Conlan, by Coit I. Hughes, Carson, Messinger, Elliott, Laughlin & Ragan, by Larry Laughlin, Phoenix, for appellee.

Gust, Rosenfeld & Divelbess, by Devens Gust, Kramer, Roche, Burch, Streich & Cracchiolo, by Marriner Cardon, Ryley, Carlock & Ralston, by Sam Applewhite III, Evans, Kitchel & Jenckes, by Edward C. LeBeau, Murphy, Posner & Franks, by John A. Murphy, Burns, Ferrin & Ehrenreich, by F. Britton Burns, Phoenix, amicus curiae.

CAMERON, Chief Judge.

This is a motion for rehearing. We decided this case on 13 December 1967 and the opinion was published in 6 Ariz.App. 576, 435 P.2d 83. In that opinion we reversed the decision of the trial court and remanded with directions that the trial court determine the validity of the tender and the amount of defendant's counterclaim for interest and grant judgment thereon. Appellant Altherr and appellee Wilshire Mortgage Company both filed timely motions for rehearing. Amicus curiae being attorneys representing "a number of banks and other financial institutions engaged in construction lending" were granted permission to file an amicus curiae brief on the motions for rehearing. We shall separately consider the positions of the two parties as well as the brief of the amicus curiae.

## MOTION OF THE APPELLANTS

In our decision, op.cit., the Court said:

"The question of the validity of the tender in this matter is a fact question which will have to be determined by the trial court on remand."

Appellant Altherr contends that the tender was sufficient and valid and that we should as a matter of law uphold the sufficiency of the tender and direct the lower court to merely enter judgment on the counterclaim. With this we do not agree. The testimony in the trial court indicated that the plaintiff had turned the matter over to the attorney of record for suit and that suit had in fact been brought against the defendant-appellant on 13 March 1964. Almost a month later on 11 April 1964 defendant Altherr attempted to leave a check with a Mrs. Nina King the office manager of Wilshire Mortgage Company. We agree with the citations:

"A bona fide tender of the whole amount due, including both principle and

interest, at maturity or at any time after the debt or obligation falls due but before any suit is brought on it, discharges the tenderer from liability for costs of any subsequent suit." 52 Am.Jur., Tender, § 40, page 244.

And:

"It is the general rule that acceptance of a check tendered in full payment of a disputed claim in a greater amount will discharge the entire obligation." Island Block Corporation v. Jefferson Construction Overseas, Inc., 349 F.2d 322, 327 (1965).

However, in order to effect a valid tender for the purpose of discharging the tenderer from liability for further cost, the burden is upon the one tendering the amount to show that the person to whom the offer was made was authorized and could properly accept said tender. We question under the facts in this case, wherein a client has turned the matter over to his attorney for suit, that making a tender of an amount to the office manager of the plaintiff is sufficient tender. Since this matter was not fully developed in the trial we believe that the matter should be remanded for determination of the effectiveness of the tender.

■ Appellant Altherr also urges that the loan being usurious, even in the absence of tender, the plaintiff Wilshire Mortgage should forfeit not only all interest but all costs including attorney's fees and court costs. With this we do not agree. The penalty imposed by Arizona statute for usury is stated as follows:

"* * * Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest." § 44–1202 A. R.S.

Had the legislature intended to forfeit court costs and attorney's fees as well, it would have been a simple procedure to say so. It did not, and in the absence of a valid tender appellant Altherr must pay court costs and attorney's fees in the instant case. Should the court find a valid tender

all costs and fees from the date of the tender need not be paid.

## MOTION FOR REHEARING OF THE APPELLEE WILSHIRE MORTGAGE COMPANY

The appellee moved for rehearing and directed its memorandum to the holding of the decision that the loan was usurious. We will discuss only two contentions of the appellee.

■ First, the appellee contends for the first time on rehearing that the following Arizona statute is applicable:

"§ 6–252. Effect of obligations insured by the federal housing administrator as security.

"No law requiring security upon which loans may be made, prescribing the nature, amount or form of such security, prescribing or limiting interest rates upon loans, or prescribing or limiting the period for which loans may be made, shall apply to loans, advances or credit, or purchases of obligations representing loans and advances of credit payment of which is insured or guaranteed by the United States or any agency or instrumentality thereof."

This statute was in effect at the time of the contract and was amended in 1963. Appellee contends that this statute controls the loan in question and "the interpretation which the Court in its decision of December 13, 1967, has placed upon A.R.S. § 44–1202, by imposing a fatal impediment to the operation in the State of Arizona of the National Housing Act, 12 U.S.C.A. 1701 [et seq.], renders the cited Arizona statute a burden on commerce between the States in violation of Section 8, Article I of the Constitution of the United States." With this we cannot agree. A reading of the contract in question and of the testimony given at the trial indicates that we are concerned primarily with the construction and permanent financing of houses which might later develop into F.H.A. financed housing. Indeed, the contract makes it clear that not all houses will be ultimately

insured by F.H.A. financing. Paragraph Number 13 of the contract states:

"Sellers hereby agree that, upon demand of Wilshire, they will deposit with Wilshire, 1% of the total amount of the loans covered by this contract. Said 1% to be rateably refunded as each loan is closed in Escrow, and in the event any parcel under this contract is not sold, subject to FHA Sec. 203-B, then Wilshire is authorized to withhold 1% of that loan from this deposit."

While it is certainly understandable, because of the large share of the home building market which is financed through F. H.A. loans, that a prudent contractor and lender might well insure that their construction and lending policies conform to F.H.A. Standards, still the contract in question was not made through or under the control of the Federal Housing Administration but was an independent loan and controlled by the usury laws of the State of Arizona. We expressly refrain from stating an opinion as to the effect of the statute once the loan has been insured by the Federal Housing Administration.

■ Appellee next contends that this Court erred in finding that the appellee received usurious interest and contends that the amounts in addition to the 6½% were not interest. While it is conceded that this merely reargues the matter previously presented to us, we believe it deserves some consideration in light of the confusion expressed by the parties to the motion for rehearing. A reading of the contract indicates that there are five items that we may take into consideration in this matter:

1. The agreement to pay the lender interest on the sums disbursed at the rate of 6½% per annum.

2. The amount of 1½% for "interim financing".

3. A 5% discount on the "take-out".

4. Wilshire to charge 1% of the F. H.A. loan for its services in processing said loan.

5. 1% of the total amount of the loans covered by this contract to be refunded as each loan is closed in escrow in the event any parcel under this contract is not sold subject to F.H.A. Section 203-B.

Even if we consider only the first two items, the 6½% interest and the 1½% for interim financing, and base these amounts on the total amount agreed to be lent rather than the amount actually lent, we find a usurious loan provided the use of the interim funds did not exceed one year. Wilshire Mortgage was to receive 6½% interest plus 1½% interest, a total of 8%, the legal maximum. By the device of deducting the 1½% at the time of the making of the advances the loan has been rendered usurious, for as our Supreme Court has stated:

"The interest called for in the note is the maximum allowed by law. (citations omitted) An agreement to pay maximum rate of interest in advance (except possibly where the loan is for a short term), would be an usurious agreement, * * *." Houchard v. Berman, 79 Ariz. 381, 290 P.2d 735, 57 A.L.R.2d 627, 629 (1955).

It is admitted, however, that in the previous opinion we did not take into consideration that the amount so taken in advance would have to be, being interest, computed over the terms of the various loans. This is an accounting process which the trial court, finding the amount not to be interest, did not perform and which this Court is unable to perform based on the record before it. The matter will then have to be remanded to the trial court to determine what relationship the amount of interest charged bears to the amount and time of the various interim loans. Thus, the 6½% per annum as provided in the contract, and the 1½% ($21,864) for interim financing paid in advance will have to be computed as interest based on the amount actually loaned and on the length of time that the money was actually loaned.

## MOTION OF THE AMICUS CURIAE

■ The amicus curiae are attorneys representing a number of banks and other financial institutions engaged in construction lending. Their brief states, "These banks and financial institutions are the source of the great bulk of the funds needed by the construction industry in Arizona", and that:

"The decision of the Court in the case at bar has alarmed both national and local lenders. *Construction lenders feel that the holding in this case is that any type of fee or charge made in connection with a construction loan is adjudged to be interest.* It may be argued that the alarm is unfounded but nevertheless it exists and the fact of its existence is important in stifling mortgage lending."

The brief of the amicus curiae concludes that:

"The items paid to Wilshire, properly identified, were not interest but were merely proper charges and deposits."

With this conclusion we disagree. The key to our previous decision was that the amounts so paid were not properly identifiable as legitimate charges and service fees. We believe that the amounts paid to Wilshire were interest as our holding has indicated, and that the Arizona case law in this regard clearly indicates that they were.

■ Amicus curiae further states, "the true issues in the case and one peculiar to the facts of this case is whether Wilshire was entitled to base its charges and deposits on the full amount for which it committed itself to make the loans or only on the loans actually advanced." We agree with the statement of the amicus curiae and we believe that the charges and deposits must be based upon the amounts actually lent, rather than the full amount for which it was committed to make the loans. Even so, we believe that in viewing the contract and the actions of the parties in deducting the interest at the time of making the advances and also the agreed 5% discount, [see 55 Am.Jur., Sec. 27, page 345, Bell v. Tindall, 215 Miss. 343, 60 So.2d 801 (1952), Graham & Lock Investments v. Madison, Tex.Civ.App., 295 S.W. 2d 234 (1956)], the contract was usurious even if the total amount stated in the contract had been loaned rather than the amount actually lent. See Grady v. Price, 94 Ariz. 252, 383 P.2d 173 (1963), Modern Pioneers Insurance Company v. Nandin, 103 Ariz. 125, 437 P.2d 658 (1968). We think the record indicates clearly that Wilshire was not an agent or broker in the transaction but was the construction lender and permanent lender. It may well be upon remand and proper accounting that only the construction portion of the contract will be found to be usurious, but we feel that if found to be so it would taint the whole contract with usury and that all interest should be refunded.

■ We have no quarrel with legitimate fees and identifiable out-of-pocket expenses charged by lenders or or by agents of lenders, but we do feel that the Arizona statute which prohibits interest "directly or indirectly in excess of 8%" is applicable to the facts of this particular case. The basis for the decisions of our Supreme Court clearly indicate that while lenders and agents may make charges to reimburse themselves for identifiable out-of-pocket expense, they may not impose upon the borrower charges (in the guise of fees and discounts) which in fact constitute lender's overhead expenses or cost of doing business.

Motion for rehearing denied.

DONOFRIO and STEVENS, JJ., concur.