# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KA-00701-SCT

*STATE OF MISSISSIPPI*

*v.*

*BYRON RODERICK, BILLY SAXTON AND CYNTHIA SAXTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/95 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHN |
| ATTORNEY FOR APPELLEES: | EARL L. DENHAM |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 8/7/97 |
| MOTION FOR REHEARING FILED: | 9/12/97 |
| MANDATE ISSUED: | 11/13/97 |

**BEFORE SULLIVAN, P.J., McRAE AND MILLS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Byron M. Roderick, Billy D. Saxton, and Cynthia Saxton were indicted by the Grand Jury of Harrison County during the March, 1994, term for violation of Mississippi's RICO Act, specifically Miss. Code Ann. § 97-43-5(3). The indictment charged that the defendants were engaged in a pattern of collecting unlawful debt through their association in an enterprise, a check cashing business called "We Cash It." Count II of the indictment charged Roderick and the Saxtons with conspiracy to participate in the unlawful collection of debt, in violation of Miss. Code Ann. § 97-43-5(4).

¶2. On March 20, 1995, the State filed a Motion to Compel Defendants' Disclosure of Potential Adverse Witnesses. The motion stated that the defendants had indicated their intent to call State's attorneys Morgan Shands and Jean Vaughan as adverse witnesses. There had also been an indication to call a witness to testify to the contents of an alleged conversation between the defendants and a female attorney in the Consumer Protection Division of the Attorney General's Office regarding the

legality of the check cashing business. State's attorney Leslie Staehle was the Director of the Consumer Protection Division at the time of the alleged conversation. The State was concerned about a possible conflict of interest that could arise if the defendants called any of these State's attorneys as adverse witnesses, and requested that the court require the defendants to disclose any intent to call them as adverse witnesses. This motion was overruled.

¶3. On March 23, the State filed a motion in limine requesting that the court exclude as irrelevant any evidence or testimony regarding legislative action or inaction in the regulation of check cashing businesses in Mississippi and the involvement of the Attorney General's Office in any such legislation. They also sought to exclude any evidence of policies of the Attorney General's Office regarding check cashing or the alleged conversation between the defendants and the Attorney General's Office. The State also requested that the court exclude any evidence of the investigation of the check cashing business in Mississippi by the Attorney General's Office, and any testimony regarding regulation of the check cashing business by the Department of Banking and Finance as irrelevant. Circuit Judge Robert H. Walker held a hearing on May 12 to hear arguments on the State's motion in limine, and the defendants' Suggested Conflict of Interest and Motion for Counsel to Withdraw. Judge Walker was going to make his ruling on these issues the following week.

¶4. The defendants filed their Motion to Quash and Dismiss Indictments and Demurrer on May 30. In this motion, the defendants alleged that Mississippi's RICO Act was unconstitutionally vague and overbroad as applied to their case. Included with their motion was a brief and exhibits in support thereof. The State filed a rebuttal memorandum in response to the defendants' motion. Judge Walker held a hearing on defendants' motion on June 5. On June 16, Judge Walker issued his order granting the defendants' Motion to Quash and Dismiss Indictments and Demurrer, finding that the application of Mississippi's RICO Act to usury is unconstitutionally vague. Under the authority of Miss. Code Ann. § 99-35-103, the State filed its notice of appeal to this Court on July 6, 1995, based upon the issue of the constitutionality of Mississippi's RICO Act as applied to usury.

## STATEMENT OF THE FACTS

¶5. Byron Roderick, a Jackson businessman, had previously opened cash checking businesses in the Jackson area and decided to open a business in Gulfport. He hired Billy and Cynthia Saxton to manage the check cashing business in Gulfport, named "We Cash It." A customer could bring in either her own check or a third party check to be cashed at a discount rate. For example, Roderick Dixon presented a check for $265, and We Cash It gave Mr. Dixon $200, retaining $65 as a service charge. When a customer brought a check in to cash, she would sign an agreement that the check could be redeemed within fourteen days, or the check would be deposited. The agreement warned that there would be a $30 fee on any returned checks and that writing bad checks could lead to imprisonment.

¶6. Prior to opening his check cashing business, Byron Roderick consulted with an accountant and a couple of bankers to find out if the business was regulated and how he should set up the business so as to comply with existing Mississippi law. He also secured a municipal license from the City of Gulfport. David DeGuire, a banker; Elvin J. Roberts, an accountant; and Ray Grubbs, a banker, all testified at the June 5 hearing on defendants' Motion to Quash and Dismiss Indictments and Demurrer. Each stated that they had informed Roderick that in their opinion, the check cashing

industry was not currently regulated by the State of Mississippi and was legal. None of these witnesses believed that the business violated Mississippi's usury law, or any other law in the State. Mr. Grubbs, Mr. DeGuire, and Bill Jones, an attorney representing four check cashing businesses, all testified that check cashing amounted to discounting negotiable instruments, not usurious loans.

¶7. Mr. Roberts, who became a partner in one of Roderick's check cashing businesses in Clinton, testified that his son Chris Berry spoke with Alice Wise at the Attorney General's Office regarding the legality of the check cashing industry. He stated that Ms. Wise informed Mr. Berry that no laws against check cashing existed in Mississippi, and that the practice did not violate Mississippi's usury laws. The defendants' attorney also indicated that the defendants and others in the check cashing industry had contacted the Attorney General's Office and other government offices regarding the regulation of check cashing. He stated that his clients and others similarly situated were informed before beginning business that the industry was not regulated, and they were led to believe that it was not a criminal activity. The Attorney General's Office does not admit that any such conversations took place.

¶8. Evidence was also presented showing that the Attorney General's Office engaged in discussions with representatives from the check cashing industry to reach agreement on regulation of the businesses. At the suggestion of the Attorney General's Office, the check cashers association hired a lobbyist to encourage the Mississippi Legislature to pass regulations on the industry.

¶9. Despite their attempts to operate We Cash It within the laws of Mississippi, Roderick and the Saxtons were indicted for violating Mississippi's RICO Act. The indictment alleged that the defendants violated the law by engaging in an enterprise involved in collecting unlawful debts. The debts were allegedly rendered unlawful by the fact that they resulted from usurious loans. The circuit court dismissed the indictment based upon the determination that Mississippi's RICO Act is unconstitutionally vague as applied to usury.

## STATEMENT OF THE LAW

### Standard of Review

> Without doubt, our constitutional scheme contemplates the power of judicial review of legislative enactments; however, that power may be exercised affirmatively only where the legislation under review be found 'in palpable conflict with some plain provision of the . . . constitution.' Statutes . . . come before us clothed with a heavy presumption of constitutional validity. The party challenging the constitutionality of a statute is burdened with carrying his case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect. When a party invokes our power of judicial review, it behooves us to recall that the challenged act has been passed by legislators and approved by a governor sworn to uphold the selfsame constitution as are we.

*In re T.L.C.*, 566 So.2d 691, 696 (Miss. 1990) (quoting *Hart v. State*, 39 So. 523, 524 (Miss. 1905) (internal citations omitted)).

**I.**

**WHETHER THE TRIAL JUDGE ERRED IN THE QUASHING OF THE INDICTMENT ON THE GROUNDS THAT THE MISSISSIPPI RICO ACT, MISS. CODE ANN. § 97-31-1 (1972), ET SEQ. IS UNCONSTITUTIONALLY VOID FOR VAGUENESS AND DOES NOT PROVIDE NOTICE TO THE DEFENDANTS OF THE CRIMES OF WHICH THEY ARE ACCUSED?**

¶10. The State argues that Miss. Code Ann. § 97-43-5, under which the defendants were indicted, clearly prohibits the operation of a check cashing business such as We Cash It. The pertinent part of § 97-43-5 reads as follows:

> (3) It is unlawful for any person employed by, or associate with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.

> (4) It is unlawful for any person to conspire to violate any of the provisions of subsections (1), (2), or (3) of this section.

Miss. Code Ann. § 97-43-5(3) and (4).

> "Unlawful debt" means money or any other thing of value constituting principal or interest of a debt which is legally unenforceable in whole or in part because the debt was incurred or contracted in gambling activity in violation of state law or in the business of lending money at a rate usurious under state law, where the usurious rate is at least twice the enforceable rate.

Miss. Code Ann. § 97-43-3(b).

¶11. Mississippi has no criminal statute against usury, other than Miss. Code Ann. § 75-67-119, governing Small Loan Regulatory licensees, which was not charged in this case. Mississippi's civil usury statute, Miss. Code Ann. § 75-17-1, states, "The legal rate of interest on all notes, accounts and contracts shall be eight percent (8%) per annum, calculated according to the actuarial method. . ." Miss. Code Ann. § 75-17-1.

¶12. There are three transactions conducted by We Cash It outlined in the indictment which the State charges were violations of Mississippi law. In two of the transactions, We Cash It received checks for $198, paying the customer $150. The $48 charge amounts to 32% of the $150 received by the customer. The indictment calls this 832% interest per anum, citing the fourteen day period allowed for reclaiming the check. This figure is calculated based upon the 32% fee over two weeks, multiplied by 26 (the number of two-week periods in one year), rendering a total of 832% annual interest. In the other transaction, the customer gave We Cash It a $265 check in return for $200, amounting to a one-time 32.5% charge, totaling 845% annual interest by the State's position. The State argues that the defendants unlawfully charged their customers well over twice the enforceable rate of interest in making loans to its customers, rendering the loans unenforceable debts pursuant to § 97-43-3(b). Because the defendants collected these unenforceable debts through the enterprise of We Cash It, the State concludes that the defendants operated their business in violation of § 97-43-5(3). The State also posits that the defendants conspired to collect unenforceable debts, thereby violating § 97-43-5(4).

¶13. In ***Meeks v. Tallahatchie County***, 513 So.2d 563 (Miss. 1987), this Court applied the test for determining whether a statute is unconstitutionally vague as set out in ***[Connally v. General Construction Co.](), 269 U.S. 385 (1926)***. "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process." ***Meeks***, 513 So.2d at 566 (quoting ***[Connally](), 269 U.S. at 391***).

> Generally speaking, a criminal statute is unconstitutional under the due process clause of the Fourteenth Amendment if it is so vague and uncertain that it does not inform those subject to it what acts it is their duty to avoid, or what conduct on their part will render them liable to its penalties. . . . 'The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'

***Cassibry v. State***, 404 So.2d 1360, 1367-68 (Miss. 1981) (quoting ***[Jordan v. DeGeorge](), 341 U.S. 223, 231 (1951))***. ***See also Reining v. State***, 606 So. 2d 1098, 1103 (Miss. 1992).

¶14. The check cashing industry, the defendants assert, is a legitimate business involved in discounting negotiable instruments. Their position is that they are not in the business of making loans, but cashing checks in exchange for a one-time fee. A check is a negotiable instrument "if it is a draft drawn on a bank and payable on demand." Miss. Code Ann. § 75-3-104. Post-dating does not affect the negotiability of a check. Miss. Code Ann. § 75-3-114. "A separate agreement does not affect the negotiability of an instrument." Miss. Code Ann. § 75-3-119(2). The checks cashed by We Cash It and other similar businesses were negotiable instruments. However, when a negotiable instrument is purchased at a discount, the discount is still limited to the 8% interest limit set by Mississippi law. Miss. Code Ann. § 75-17-5. This Court has previously held

> While paper for which value has once been given can ordinarily be discounted at any rate, it is clear that the discount of paper for which no value has previously been given is the first value for such paper, and is usurious where it exceeds the rate allowed by usury statutes relating to loans. . .

***Bell v. Tindall***, 60 So.2d 801, 804 (Miss. 1952) (quoting 55 Am.Jur. § 27). The United States Supreme Court has also held that discounting notes in advance is not in itself usurious, but is limited to the maximum interest rate allowed by state law. ***[Evans v. National Bank of Savannah](), 251 U.S. 108, 113-14 (1919)***. Even if We Cash It was involved in discounting negotiable instruments rather than making loans, the 8% allowable interest rate would still apply and be well-exceeded in this case.

¶15. However, even if the defendants were engaging in usury, Roderick and the Saxtons argue that because usury is not a criminal offense in Mississippi, the application of Mississippi's RICO Act to usury is an attempt by the State to criminalize activity otherwise condoned by Mississippi law. Usury is not a crime in Mississippi, but only enforceable by civil remedy, except under § 75-67-119 as a misdemeanor, as previously discussed. The State's argument is that the Mississippi RICO Act does not make usury a crime, but instead creates a new crime of collection of an unlawful debt, using the usury statute only to define the legal rate of interest. This argument by the State amounts to legal gymnastics. Essentially, if the RICO Act is applied to usury, then usury conducted through an enterprise becomes criminal activity that otherwise is merely subject to civil penalty under Mississippi law. As the circuit court stated in its opinion:

If the Legislature intended to transform usury (which was theretofore recognized only as the basis for a civil right of action of defense, except as it pertains to Small Loan Regulatory licensees) into a crime when it enacted RICO, it had a duty to do so with sufficient specificity to give fair notice and definite warning of the conduct that is prohibited.

¶16. The State argued at the hearing that RICO is a general intent crime that takes its intent from the underlying crimes, attempting to prove that the intent required for a violation of RICO as applied to usury would not be specific intent. However, because the cases interpreting the level of intent for usury are civil, they do not apply to a criminal prosecution. *Sunburst Bank v. Keith*, 648 So.2d 1147, 1151-52 (Miss. 1995). Because RICO does not set out the level of intent required for prosecution of usury, an essential element of the crime is left out and would have to be guessed at by those trying to apply it or avoid prosecution under it.

¶17. Also, all crimes used as bases for a RICO prosecution are outlined in the RICO Act, and there are cross-references between RICO and the underlying criminal statutes. There do not appear to be any other cases in which Mississippi or any other state has tried to prosecute under RICO with a civil statute as the underlying offense. No reference to RICO is made in the usury statute or the other statutes on interest and finance charges, other than in the previously discussed § 75-67-119. A person of ordinary intelligence reading the laws governing interest rates, finance charges, and usury would not be given fair warning that usury is a prosecutable offense.

¶18. Adding to this confusion is the evidence that the Attorney General's Office encouraged the check cashers association to lobby the Mississippi Legislature for regulation of their industry. It is disingenuous for the Attorney General's Office to call an activity criminal on the one hand, but to encourage its regulation on the other. The testimony regarding contact between the check cashers and the Attorney General's Office in which the check cashers were led to believe that their business was legal also adds support to the argument that the check cashing industry was not given fair notice that their activity was criminal. The fact that these defendants attempted to enter into their business legally by investigating the laws governing check cashing, and were unable to find any legal bar to their activity is strong evidence of the vagueness of Mississippi's RICO Act as applied to usury.

¶19. Roderick and the Saxtons also argue that the statute under which they were charged was intended by the legislature to proscribe organized crime by mafia-type enterprises and loansharking enforced by violence. The language of Mississippi's RICO Act does not limit enforcement to the types of unlawful loans traditionally associated with loansharking and intimidation or brutality. However, because the check cashing industry is relatively new to Mississippi, having developed since 1990, it is unlikely that the Mississippi Legislature specifically intended to prohibit check cashers from operating through passage of the Mississippi RICO Act in 1986, modeled after the Federal RICO Act, 18 U.S.C.A. § 1962.

## CONCLUSION

¶20. Mississippi's RICO Act fails to adequately outline the requisite intent for violation of the statute as applied to usury. While all other underlying offenses contain cross-references to RICO and are specifically outlined in RICO, Mississippi's usury law does not contain any cross-reference to the RICO Act. The defendants in this case made a concerted effort to determine whether they were in

compliance with Mississippi law, and yet were unable to find that their business violated Mississippi's RICO Act. Any other person of common intelligence reading RICO and the laws governing usury in Mississippi would be unable to ascertain that usury is criminally barred by RICO. As a result, we affirm the circuit court's order finding that Mississippi's RICO Act is unconstitutionally vague as applied to usury.

¶21. **AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, McRAE, SMITH, ROBERTS AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**BANKS, JUSTICE, DISSENTING:**

¶22. With deference, I am compelled to dissent because, in my view, the statute in question amply apprises those who would read it as to the conduct it prohibits and makes amenable to a criminal sanction. In my view, then, the statue is not void for vagueness. I would reverse the judgment of the circuit court dismissing the indictment and remand this matter to that court for further proceedings.

¶23. The statute in question prescribes that one involved with an enterprise that is engaged in the collection of an unlawful debt is subject to a criminal sanction. An unlawful debt is specifically defined to include one which carries an interest rate in excess of the rate allowed by law; an interest rate that exceeds twice the amount of the lawful rate is criminally unlawful. The rates allowed by law are those prescribed in our usury statutes. *See* Miss. Code Ann. §  75-17-1.

¶24. The circuit court asserted that it could not ascribe to the legislature an intent to criminalize usury. The fact is that the legislature has not criminalized *all* usury. It criminalized usury where it rose to a specified degree, that is, twice the allowable rate. I know of nothing in our constitution that prohibits the legislature from treating that conduct or even lesser conduct as criminal. Surely, the statute does not become vague simply because the circuit court disagrees with the legislature as a matter of policy.

¶25. It is beyond dispute that check-cashing businesses can be operated[1] well within the constraints of the law. Here, however, the defendants were engaged in lending practices which involved fees, which are considered as interest under our usury statutes, in amounts as much as 832% (per annum) of the principal amounts advanced. These fees clearly violate the RICO statute, in that they more than exceed twice the enforceable rate of interest. Defendants can point to no law that even arguably allows them to charge such a rate. They protest that the RICO law was aimed at those engaged in illegal "loansharking" or connected with organized crime. However, the clear language of the statute criminalizes the activity no matter who is engages in it, and no matter whether it arises to traditional notions of "loansharking." The fact that one operates as described in the statute out in the open, rather than in a gangster-filled back alley provides no immunity. *Cf.* **H.J. Inc. v. Northwestern Bell, 492 U.S. 229, 249 (1989)** ("Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways"; "[l]egitimate businesses 'enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences'" (citations omitted)).

¶26. That said, the indictment here involved charges the defendants with "wilfully, knowingly, unlawfully and feloniously" performing the acts in question. We are not called upon to decide whether the addition of these words is necessary to the validity of a charge under the statute. It should suffice to say that these defendants' assertions concerning how they came to be in the business in the first place and their prior contacts with representatives of the government of the state of Mississippi will bear upon the ultimate determination whether they are guilty as charged, that is, whether they acted "wilfully, knowingly and feloniously." Those contentions do not seem to me to have any bearing on the question of whether the enabling statute is unconstitutionally vague.

¶27. The majority accepts the defendants' arguments concerning their efforts and those of the Attorney General in seeking legislation regulating their practices. I do not. The plain fact is that the law prohibits the conduct here alleged. The failure to achieve legislative sanction for that conduct through recognition and further regulation in some manner does not, in my view, affect the validity of the prohibitory statute.

1. For example, as the majority notes, it is perfectly lawful for a business to cash payroll checks (or other third-party checks), *the value of which has already been defined,* for patrons, and retain for itself some discount from the amount on the face of the check. **Bell v. Tindall,** 60 So. 2d 801, 804 (Miss. 1952).