# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI

### NO. 96-KA-01085 COA

**ANTHONY WILLIAM MILLER**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/96 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE S. SHADDOCK |
| | CALVIN D. TAYLOR |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CAPITAL MURDER: SENTENCED TO SERVE A TERM OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MDOC, SAID SENTENCE TO BE SERVED WITHOUT BENEFIT OF PAROLE GOOD-TIME, EARNED-TIME OR OTHER ADMINISTRATIVE REDUCTION OF SENTENCE, AND PAY ALL COSTS; |
| DISPOSITION: | AFFIRMED-12/30/98 |
| MOTION FOR REHEARING FILED: | 1/13/99 |
| CERTIORARI FILED: | 4/7/99 |
| MANDATE ISSUED: | |

BEFORE BRIDGES, C.J., HINKEBEIN, KING, AND PAYNE, JJ.

KING, J, FOR THE COURT:

¶1. Anthony William Miller was convicted of capital murder in the Greene County Circuit Court and sentenced to serve a term of life imprisonment, without the benefit of parole, good-time, earned-time or

other administrative reduction of sentence, in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Miller has appealed and assigned seven points of error. This Court quotes these alleged errors verbatim:

**(1) In failing to sustain the Appellant's Motion for a Mistrial during the testimony of Belinda Graham, as an unqualified expert, and after a sustained objection to said testimony, the trial court committed reversible error.**

**(2) The trial court erred in failing to quash the indictment on the unconstitutional issue of no specific intent in the statute charging the appellant.**

**(3) Section 97-5-39, Miss. Code of 1972 (amended) is unconstitutional, and violative of the Appellant's Fifth, Eighth and Fourteenth Amendment rights for vagueness, and as it contains no provision for a lesser included offense.**

**(4) The trial court erred in granting, over objection, State Jury Instructions S-1 and S-9, said instructions being incorrect statements of the law.**

**(5) The trial court erred in refusing the Appellant's proffered Jury Instructions D-1 and D-6, effectively denying the Appellant two critical theories to his defense.**

**(6) The verdict of the jury is against the overwhelming weight of the credible evidence in this case and is contrary to law.**

**(7) The culmination of error in this trial requires reversal.**

Finding only harmless error, we affirm the circuit court judgment.

## FACTS

¶2. On August 4, 1995, Gwendolyn Bradley left her fourteen month old son, Chase, with Miller at his trailer home in Neely, Mississippi. Miller, who was Ms. Bradley's boyfriend, had agreed to care for Chase while she ran errands in town.

¶3. According to Miller, as Ms. Bradley departed the trailer, he walked into the living room to give Chase some liquid Tylenol. He heard Ms. Bradley yell to him as she walked out the side door, but did not understand her. Miller testified that he left Chase in the living room and walked to the side door to find out what Ms. Bradley said, but she had already departed in the car.

¶4. Miller said that he walked back into the living room, but did not see Chase. He checked throughout the trailer, but Chase was not present. Miller stated that he finally found Chase sitting in front of the trailer steps crying.

¶5. After picking Chase up and walking into the trailer, Miller noticed that a small amount of blood had drooled from the corner of Chase's mouth. According to Miller, as he wiped the blood away with a washcloth, Chase began to have a seizure. Miller quickly picked him up and took him to his mother's trailer next door. Miller and his mother decided to drive Chase to the Greene County Ambulance Service in Leakesville, Mississippi. While riding there, Miller explained that he thought Ms. Bradley may have hit Chase accidentally with her car.

¶6. Upon Chase's arrival in Leakesville, medical personnel determined that he was in need of greater medical attention. Because the ambulance unit in Greene County was not fully equipped with advanced cardiac life support equipment, Charlotte Parnell, the supervising nurse at the George County Hospital emergency room, traveled in its appropriately equipped ambulance to meet the Greene County ambulance. Both ambulances met just across the county line.

¶7. Ms. Parnell examined Chase in the George County ambulance. She found his eyes fixed and dilated. He had ceased breathing and was very cold and dry. Ms. Parnell observed that Chase had no abrasions or cuts, and his body and hair were clean. After arriving at the George County Hospital, Ms. Parnell noticed swelling above Chase's left ear.

¶8. Dr. John Vanderwood, an emergency room physician at the George County Hospital, examined Chase. He took x-rays of Chase's head and chest. The x-rays of the head revealed a large break in the skull. He found swelling on the left side, toward the back of Chase's head, but no other injuries. The chest x-ray did not reveal any abnormalities.

¶9. Dr. Vanderwood transferred Chase to a better equipped hospital in Mobile, Alabama. Chase died en route to this hospital. Dr. Vanderwood subsequently called the Department of Human Services in George County and the Greene County Sheriff's Department to report what he considered to be potential child abuse.

¶10. On August 5, 1995, Dr. Gregory Wanger, a forensic pathologist, performed an autopsy on Chase. He found the following injuries:

(a) a contusion at the base of the upper part of the left ear,

(b) a contusion behind the left ear,

(c) a contusion on the right cheek,

(d) a torn and bruised frenulum, the web of tissue between the gum and the lip,

(e) a bruised area high up on the back of the head to the right,

(f) a bruised area near the center portion of the head,

(g) contusions underneath the chin.

¶11. It was Dr. Wanger's opinion that Chase died from blunt force injuries to the head, inflicted while Chase was stationary. Because Chase's fractures lacerated the brain, Dr. Wanger thought that Chase would not have had the capability to sit and cry, as alleged by Miller, after sustaining such injuries.

¶12. Dr. Wanger measured the distance from Chase's heel to the injuries on his head. From the heel to the large bruise to the back of the head, 25 1/2 inches were measured. From the heel to the bruise at the top of the head, 28 1/4 inches were measured. These measurements, when compared to the height of the front and back car bumpers of Ms. Bradley's car, indicated that the injuries were inconsistent with an automobile injury.[1]

¶13. Dr. Stephen Haynes, a pathologist at the Rankin Medical Center and the Mississippi Department of

Public Safety, reviewed Dr. Wanger's autopsy report, the post-mortem examination report, photographs taken of Chase and the trailer home, medical reports prepared by the emergency medical technicians, a statement by Kevin Fortenberry, an investigator for the Mississippi Highway Patrol Criminal Investigation Division, and a statement from Miller taken at the police station. After analyzing this evidence, it was Dr. Haynes's opinion that Chase's cause of death was blunt force trauma and his injuries were inconsistent with having been hit by an automobile.

¶14. Miller was arrested and indicted for capital murder. On August 24, 1996, a jury convicted Miller of this charge. His motion for new trial having been denied, Miller now appeals his conviction and sentence.

## ISSUES

**I. IN FAILING TO SUSTAIN THE APPELLANT'S MOTION FOR A MISTRIAL DURING THE TESTIMONY OF BELINDA GRAHAM, AS AN UNQUALIFIED EXPERT, AND AFTER A SUSTAINED OBJECTION TO SAID TESTIMONY, THE TRIAL COURT COMMITTED REVERSIBLE ERROR.**

¶15. In his first assignment of error, Miller contends that Belinda Graham, an emergency medical technician employed by the Greene County Ambulance Service, improperly testified as an expert witness. He argues that Ms. Graham was not properly qualified and tendered as an expert, and therefore her testimony regarding the cause of injury to Chase should have been excluded or a mistrial should have been granted.

¶16. The following testimony was elicited from Ms. Graham on direct examination:

Q: All right. And had you actually been employed as an EMT from 1990 to 1995?

A: Yes, sir.

Q: As an EMT, had you had an opportunity, or had you had an opportunity over that four or five year period of time, to become involved with patients that have been struck by vehicles?

A: Yes, sir.

Q: All right. Now, you had an opportunity to observe this child, did you not?

A: Yes, sir.

Q: Can you tell these ladies and gentlemen about how long of an opportunity, in terms of time, that you had to look at this child?

A: From the time that he exited the car, up the steps to me, from the time I had the child until I placed him on the floor, and also as we were securing him to the short back board, I had an adequate amount of time to make a visual observation.

Q: All right. And did you in fact look at the child complete, head to toe?

A: Yes, sir.

Q: And what was the purpose of that?

A: Just to make an assessment of possible injuries that needed to be treated.

Q: Can you tell these ladies and gentlemen what the child was wearing when he was brought in to you?

A: To the best of my knowledge, he was wearing maybe a white diaper, a pamper or something.

Q: All right. Did you have an opportunity, ma'am, to notice whether or not he had any injuries on his body?

A: I noted no external damage, no sir.

Q: Can you tell us whether or not that would be consistent or inconsistent with the history[2] given you by the defendant Tony Miller?

¶17. At this point in the direct examination, Miller objected. He argued that Ms. Graham was not qualified to give an expert opinion regarding the cause of trauma to Chase. The State responded that Ms. Graham was merely giving her observations as to whether Chase had been hit by an automobile. To support the admission of Ms. Graham's testimony, the State made the following proffer of evidence outside the presence of the jury:

Q: Mrs. Graham, did you have an opportunity to observe this child?

A: Yes, sir.

Q: Did you notice any bruises or scratches on his body?

A: No, sir.

Q: Did you notice any grass stains?

A: No, sir.

Q: Did you notice any dirt?

A: No, sir.

Q: Did you notice any abrasions?

A: No, sir.

Q: Did you notice anything on this child's body which would indicate to you he had been struck by an automobile?

A: No, sir.

¶18. At the conclusion of the proffer, the defense again objected. Miller argued that the last question still required an expert opinion. The trial judge sustained this objection, but allowed the State, during direct-

examination, to ask the other questions presented in the proffer.

¶19. Before the State concluded its direct examination, the prosecutor asked the following questions which again centered on the cause of trauma to Chase:

> Q: Now based on those observations, did that give you an indication as to whether or not this child had been struck by a car? . . .

> Q: What injuries, if any, did you observe on this child's body which would indicate he had been struck by a car?

¶20. The defense objected to the first question, and moved for a mistrial after the second question. The trial judge sustained the objection to the first question, but denied Miller's request to have the question stricken and the jury advised to disregard the statement. Miller's motion for mistrial was also denied.

## Law

¶21. Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case.

¶22. Upon motion of a party or its own motion, the court may declare a mistrial if:

> 1. The trial cannot proceed in conformity with law; or

> 2. It appears there is no reasonable probability of the jury's agreement upon a verdict.

URCCC 3.12

## Analysis

¶23. A review of the record reveals that Ms. Graham was not tendered as an expert witness and never gave her opinion, in the presence of the jury, regarding the cause of trauma to Chase. However, this Court notes that on four occasions the prosecutor improperly sought testimony from Ms. Graham which concerned the cause of trauma to Chase. Ms. Graham's opinion, in this regard, would have been an expert opinion requiring skill, experience, training and education. M.R.E. 702. Having failed to tender and qualify Ms. Graham as an expert witness, it was error for the State to seek Ms. Graham's opinion about the cause of trauma to Chase.

¶24. Notwithstanding the prosecutor's efforts to ask an improper question on four occasions, we do not find that substantial and irreparable prejudice resulted to Miller's case. Considering that three physicians and an emergency room nurse testified regarding the cause of trauma to Chase and Ms. Graham never gave a response to the prosecutor's questions in the presence of the jury, the State's error was harmless.

**II. THE TRIAL COURT ERRED IN FAILING TO QUASH THE INDICTMENT, ON THE UNCONSTITUTIONAL ISSUE OF NO SPECIFIC INTENT IN THE STATUTE CHARGING**

**THE APPELLANT.**

¶25. In his second assignment of error, Miller contends that the indictment should have been quashed because the statute upon which the indictment was based failed to include deliberate design.

### Law

The killing of a human being without the authority of law shall be capital murder when done with or without any design to effect death, by any person engaged in the commission of the crime of felonious abuse and/or battery of a child in violation of subsection (2) of § 97-5-39 of Miss. Code Ann.

Miss. Code Ann. § 97-3-19(2)(f).

¶26. Miss. Code Ann. § 97-5-39 (2) states that felonious abuse and/or battery of a child occurs when any person shall intentionally burn, torture, whip, strike or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm.

### Analysis

¶27. Miller argues that the indictment failed to include deliberate design, a specific intent provision.

¶28. The indictment read, in pertinent part:

Anthony William Miller in Greene County, Mississippi, on or about August 4, 1995, did then and there willfully, unlawfully and feloniously, and without any design to effect death, kill and murder Chase Bradley, a human being under the age of eighteen years, while in the commission of the crime and felony of abuse and/or battery of a child, as defined by Miss. Code Ann. § 97-5-39 (as amended), contrary to and in violation of Miss. Code Ann. § 97-3- 19(2)(f) (as amended) and against the peace and dignity of the State of Mississippi.

¶29. According to Miss. Code Ann. §97-3-19(2)(f)(as amended), capital murder may be committed *with or without* deliberate design. Though the commission of murder generally requires deliberate design, "[t]he intent of the [Mississippi] Legislature was that serious child abusers would be guilty of capital murder [when committing the underlying felony with or without deliberate design] if the child died." *Faraga v. State*, 514 So.2d 295, 302 (Miss.1987). "[T]he Legislature's prerogative is to define crimes and set the punishment for offenders, and this prerogative is given great latitude." *Id.* Accordingly, this Court defers to the wisdom of the Legislature.

**III. SECTION 97-5-39, MISSISSIPPI CODE ANNOTATED OF 1972 (AS AMENDED) IS UNCONSTITUTIONAL AND VIOLATIVE OF THE APPELLANT'S FIFTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS FOR VAGUENESS, AND AS IT CONTAINS NO PROVISION FOR A LESSER INCLUDED OFFENSE.**

¶30. Miller contends that Miss. Code Ann. § 97-5-39 is unconstitutionally vague because it allows the merger of the crime of felony child abuse with capital murder. Under this "merger," Miller argues that a specific set of facts supporting the crime of capital murder has not been alleged against him. Miller's argument is without merit.

¶31. To determine whether a statute is unconstitutionally vague, the Court must ascertain whether it does not inform those subject to it what acts it is their duty to avoid, or what conduct on their part will render them liable to its penalties. *State v. Roderick*, 704 So.2d 49, 53 (Miss.1997). "The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.* (quoting *Jordan v. DeGeorge,* 341 U.S. 223, 231-32 (1951)).

¶32. In light of this standard, we find that Miss. Code Ann. § 97-5-39 clearly states the elements of felonious child abuse and/or battery and provides a sufficiently definite warning of what is unlawful conduct. This statute requires that any person who shall intentionally burn, torture, whip, strike, or otherwise abuse or mutilate a child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse and/or battery of a child. Considering the precise language of the statute and its legislative intent, this Court does not find this statute vague.

¶33. Miller also contends that Miss. Code Ann. § 97-5-39 fails to allow a lesser-included offense i.e., simple murder. This argument is too without merit.

¶34. As previously mentioned, the legislature defines crime and sets the punishment for crimes. As a matter of policy, it was determined that felony child abuse/battery would be elevated to capital murder, without the opportunity for a lesser-included offense. In light of policy considerations, this Court again defers to the judgment of the legislature.

## IV. THE TRIAL COURT ERRED IN GRANTING, OVER OBJECTION, STATE'S JURY INSTRUCTIONS S-1 AND S-9, SAID INSTRUCTIONS BEING AN INCORRECT STATEMENT OF THE LAW.

### Instruction S-1

¶35. While the attorneys were engaged in discussion of the jury instructions, the State requested that its Instruction S-1 be amended. Over Miller's objection, the trial court granted the amended instruction. Miller now argues that the amendment (1) was untimely and (2) should have been amended to reflect with deliberate design. Because Miller failed to argue the timeliness issue at the trial court, this issue is procedurally barred on appeal. *Chase v. State*, 645 So.2d 829, 859 (Miss.1994). This Court addresses only the deliberate design issue.

### Analysis

¶36. Before its amendment, Instruction S-1 read as follows:

> If you believe from all the evidence in this case, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, that the defendant Anthony William Miller, on or about August 4, 1995, in Greene County, Mississippi, did wilfully, unlawfully, feloniously, with or without deliberate design, then and there kill Chase Bradley, a human being, without authority of law, when engaged in the commission of the crime of felonious abuse and/or battery, then, if you so believe

from all the evidence in this case beyond a reasonable doubt, the defendant is guilty of capital murder, and it is your sworn duty to say so by your verdict.

¶37. The State requested that it be amended to read "without deliberate design". The defense objected, claiming that the term "willful" denoted deliberate action, and therefore the instruction should have read "with deliberate design".

¶38. Miller is correct. Wilful means deliberate. BLACK'S LAW DICTIONARY 1599 (6th ed.1990). However, in the instant instruction, the act of deliberateness was required when committing felonious child abuse and/or battery, the underlying felony. *Lester v. State*, 692 So.2d 755, 789 (Miss.1997). Because capital murder may be committed without deliberate design, the trial court did not err in allowing the State's amendment.

## Instruction S-9

¶39. Miller argues that there was no evidentiary basis for Instruction S-9.

¶40. Instruction S-9 read as follows:

> The Court instructs the jury that if you believe from all the evidence in this case beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence, that the defendant, Anthony William Miller, in Greene County, Mississippi, on or about August 4, 1995, did wilfully, unlawfully, feloniously, and intentionally whip, strike, or otherwise abuse or mutilate Chase Bradley, a child under the age of eighteen (18) years, in such a manner as to cause serious bodily harm, not in self-defense, or in defense of others, then the same would constitute felonious child abuse or battery.

> The Court further instructs you that a pattern of abuse dispenses over a period of time, need not be shown in order for the acts, if any, of the defendant to constitute the crime of felonious child abuse and/or battery.

## Analysis

¶41. "[T]he general rule is that jury instructions must be supported by evidence . . ." *Wilson v. State*, 592 So.2d 993, 997 (Miss.1991). Notwithstanding the testimony of Miller, his mother, and his brother that he would not have abused Chase, this Court finds that ample evidence was presented which supported the granting of Instruction S-9.

## V. THE TRIAL COURT ERRED IN REFUSING THE APPELLANT'S PROFFERED JURY INSTRUCTIONS D-1 AND D-6, EFFECTIVELY DENYING THE APPELLANT TWO CRITICAL THEORIES TO HIS DEFENSE.

¶42. Miller argues that the trial court erred in denying defense Instructions D-1 and D-6.

¶43. These instructions read as follows:

Instruction D-1

The Court instructs the jury that there are two possible verdicts for you to consider in this case. Based

upon the evidence presented in trial, you must decide whether Anthony Miller is guilty of capital murder or that he is not guilty.

1) For you to find Anthony Miller not guilty of capital murder, you must be convinced beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with that of innocence of all the following elements:

a) That Anthony Miller did kill and murder Chase Bradley, a human being,

b) while engaged in the crime of child abuse as defined in these instructions of law.

2) If you are not convinced beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with that of innocence that Anthony Miller is guilty of capital murder as defined herein; your verdict must be that of not guilty.

Instruction D-6

The Court instructs the jury that the term or phrase "to the exclusion of every reasonable hypothesis consistent with that of innocence" means that in a circumstantial evidence case such as this case, that the burden of proof is upon the State of Mississippi to prove each and every essential element of the crime charged beyond a reasonable doubt and to the exclusion of every reasonable theory of the case that is compatible with that of a finding of not guilty.

## Analysis

¶44. The trial judge denied Instruction D-1. She determined that the language included in this instruction, though in accordance with the law, was adequately presented in other instructions. This Court agrees. State Instructions S-1, S-9, and Defense Instructions D-4A, D-5, and D-8A properly defined the elements of capital murder and felonious abuse, and stated the State's burden of producing evidence to prove Miller's guilt to the exclusion of every other reasonable hypothesis. This Court will not reverse for denial of an individual instruction when the jury has been instructed properly and fully by the granting of all the instructions. *Catchings v. State*, 684 So.2d 591, 599 (Miss.1996).

¶45. Instructions defining reasonable doubt are not proper. *Gray v. State*, 351 So.2d 1342, 1348 (Miss.1977). This Court finds that Instruction D-6 was essentially an attempt to define reasonable doubt. The trial court properly denied its admission.

## VI. THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE IN THIS CASE AND IS CONTRARY TO LAW.

¶46. Miller contends that the verdict is against the overwhelming weight of the evidence and contrary to law.

## Law

¶47. "In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial." *Isaac v. State*, 645 So.2d 903, 907 (Miss.1994).

## Analysis

¶48. The record reveals that Chase died from blunt force trauma to the head. Though Miller denied abusing Chase and attributed his death to being hit by a car, Ms. Parnell, Dr. Vanderwood, Dr.Wanger and Dr. Haynes each testified that Chase's injuries were not consistent with being struck by an automobile. This medical testimony considered with the fact that Chase was in Miller's sole custody prior to his death, provided the jury a substantial basis upon which to find Miller guilty of capital murder. Accepting as true the evidence which supported the verdict, this Court does not find that the verdict was against the overwhelming weight of the evidence.

**VII. THE CULMINATION OF ERROR IN THIS TRIAL REQUIRES REVERSAL.**

¶49. Having found only harmless error in the instant case, Miller's final assignment of error is without merit.

¶50. **THE JUDGMENT OF THE SIMPSON COUNTY CIRCUIT COURT ON CHANGE OF VENUE FROM THE GREENE COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT BENEFIT OF PAROLE, GOOD-TIME, EARNED TIME OR OTHER ADMINISTRATIVE REDUCTION OF SENTENCE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GREENE COUNTY.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

1. Stanley McLeod, the Sheriff of Green County, examined Ms. Bradley's car. He determined that the front bumper was approximately sixteen (16) or seventeen (17) inches from the ground. The rear bumper measured approximately fifteen (15) inches from the ground.

2. Ms. Graham previously testified that Miller stated that Chase had been hit by a car.